[Cite as *In re J.T.*, 2017-Ohio-7723.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### Nos. 105311 and 105316

---

# IN RE: J.T.
# A Minor Child

---

## JUDGMENT:
## AFFIRMED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. DL 16103910 and DL 16108687

**BEFORE:** Boyle, P.J., S. Gallagher, J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 21, 2017

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender
BY:   Timothy Hackett
Assistant Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio   43215


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Geoffrey S. Minter
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

**{¶1}** In this consolidated appeal, the defendant-appellant, J.T., appeals the juvenile court's disposition of two years of commitment for Cuyahoga C.P. Nos. DL 16103910 and DL 16108687. He raises three assignments of error for our review:

> 1. The Cuyahoga County Juvenile Court abused its discretion when it issued a judgment entry that failed to reflect what actually occurred during its dispositional hearing.
>
> 2. The Cuyahoga County Juvenile Court violated J.T.'s right to be free from double jeopardy and right to equal protection when it enhanced his weapons under disability offense with a firearm specification.
>
> 3. J.T.'s trial counsel rendered ineffective assistance by failing to object to the imposition of J.T.'s firearm specification, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution; and, Article I, Sections 10 and 16, Ohio Constitution.

**{¶2}** Finding merit to J.T.'s first assignment of error, we remand to the juvenile court to correct its dispositional journal entry.

## I. Procedural History and Factual Background

**{¶3}** In Case No. DL 16103910,[1] the state of Ohio filed a complaint against J.T.

---

[1] The charges in Case No. DL 16103910 stem from an incident where J.T., along with his brother, allegedly stole and stripped a car from a mall parking lot.

alleging one count of receiving stolen property. In Case No. DL 16107971,[2] the state filed a complaint against J.T. alleging one count of having a weapon while under disability, with a one-year firearm specification and forfeiture-of-weapon specification; one count of carrying a concealed weapon, with a forfeiture-of-weapon specification; and one count of improperly handling a firearm in a motor vehicle, with a one-year firearm specification and a forfeiture-of-weapon specification. In Case No. DL 16108687,[3] the state filed a third complaint against J.T. alleging one count of having a weapon while under disability, with one- and three-year firearm specifications; one count of tampering with evidence; two counts of receiving stolen property, with one- and three-year firearm specifications; and one count of carrying a concealed weapon. J.T. denied the allegations.

{¶4} Eventually, J.T. agreed that he would admit to amended charges incorporating all three cases. As part of the plea deal, the trial court, upon the state's request, nolled all of the counts in Case No. DL 16107971, as well as the count of tampering with evidence, the one-year firearm specification for the weapon while under disability count, and the one- and three-year firearm specifications for the receiving stolen property counts in Case No. DL 16108687. In return, J.T. admitted to the

---

[2] The charges in Case No. DL 16107971 are based on a traffic stop of a vehicle in which J.T. was a passenger. During the traffic stop, a loaded firearm was found under the backseat of the vehicle.

[3] The charges in Case No. DL 16108687 stem from an incident where J.T. and his brother stole a car from a gas station and, before abandoning it, stole a firearm, body armor, handcuffs, tactical boots, and gear bags from the vehicle.

complaint of receiving stolen property in Case No. DL 16103910 and to having a weapon while under disability, including the three-year firearm specification, two counts of receiving stolen property, and one count of carrying a concealed weapon in Case No. DL 16108687.

{¶5} During the plea hearing, the juvenile court stated, "With respect to the having weapons under disability count, that's Count 1 in case number ending in 8687, because you're going to admit to being found delinquent of the three-year gun spec, it is mandatory that you be sent to the Ohio Department of Youth Services."   J.T. stated he understood that he was required to spend at least one year at the Ohio Department of Youth Services ("ODYS") by admitting to the three-year gun specification.   Neither the state nor J.T. or his counsel objected to the juvenile court's imposition of the gun specification during the plea hearing.

{¶6} At the dispositional hearing, the juvenile court committed J.T. to a two-year minimum term of commitment at the ODYS.   In calculating J.T.'s sentence, the juvenile court stated:

> So for having weapons under disability, * * * that is a $750 fine.   The fine will be suspended. * * * That six-month commitment to the Ohio Department of Youth Services, minimum period of confinement, maximum period is until he turns 21.   I'll give him the minimum, and I do have discretion to do three years. * * *   I'm only going to do one.   So it's one year on the gun spec, mandatory, six months on the having weapons under disability, so it's a year and a half.   The one year has to be served.

In addition to that 18-month commitment, the juvenile court found that J.T.'s three receiving stolen property counts would merge, added another six months to J.T.'s term of

commitment, and imposed a suspended $400 fine.    Finally, as to the count of carrying a concealed weapon, the juvenile court imposed a suspended $100 fine.

**{¶7}** It is from this judgment that J.T. appeals.

## II. The Juvenile Court's Judgment Entry

**{¶8}** In his first assignment of error, J.T. claims that the juvenile court failed to accurately journalize the proceedings at the dispositional hearing.    The state agrees with J.T. and concedes this error.    We agree as well.

**{¶9}** Because Ohio courts speak through their journal entries, it is essential for those journal entries to be an accurate and truthful reflection of the court's proceedings. *State ex rel. Worcester v. Donnellon*, 49 Ohio St.3d 117, 118, 551 N.E.2d 183 (1990). A court may correct a clerical mistake in a judgment entry to accurately reflect the case's proceedings at any time.    Crim.R. 36; *In re F.M.,* 8th Dist. Cuyahoga No. 93255, 2009-Ohio-6317, ¶ 9.    A "clerical mistake" is "a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19.

**{¶10}** When clerical mistakes are raised on appeal, Ohio appellate courts may remand the issue to the trial court and direct that the court correct the misstatement through a nunc pro tunc entry.    App.R. 9(E); *State v. Peacock*, 8th Dist. Cuyahoga No. 102567, 2015-Ohio-4697, ¶ 40; *see also In re F.M.* at ¶ 12 ("The state does not dispute the errors in the entries.    Accordingly, we sustain the first assignment of error and

remand the matter to the trial court to issue a nunc pro tunc entry correcting the April 6, 2009 journal entry to accurately reflect what occurred during the proceedings of this case."). "A nunc pro tunc order records acts done at a former time that were not then carried into the record. A nunc pro tunc order may be used to make the record reflect the truth, but not to reflect something that did not occur." *State v. Kelly*, 8th Dist. Cuyahoga No. 102413, 2015-Ohio-5272, ¶ 46, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659.

{¶11} In its journal entry, the juvenile court did not indicate that J.T.'s counts for receiving stolen property were allied offenses on the record and expanded on its earlier disposition for the count of carrying a concealed weapon, adding a 90-day term of detention in addition to the $100 fine. Yet, during the dispositional hearing the juvenile court stated that the counts for receiving stolen property merged and made no mention of a term of commitment for the count of carrying a concealed weapon.

{¶12} Both J.T. and the state acknowledge those discrepancies and agree that the proper remedy is to remand the issue to the juvenile court for correction through a nunc pro tunc entry. Accordingly, we remand the matter to the juvenile court to allow the juvenile court to correct its December 12, 2016 journal entry reflecting that J.T.'s counts of receiving stolen property are allied offenses as well as reflecting the proper punishment for the count of carrying a concealed weapon.

{¶13} J.T.'s first assignment of error is sustained.

**III.    The Firearm Specification**

{¶14} In his second assignment of error, J.T. argues that the juvenile court violated his double jeopardy and equal protection rights by enhancing his weapons while under disability offense with a firearm specification.

## A. Standard of Review

{¶15} When a defendant fails to object or raise the issue of double jeopardy at trial or disposition, an appellate court reviews the issue for plain error. Crim.R. 52; *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.   Courts should exercise the "utmost caution" when applying plain-error review as it only applies to prevent a "manifest miscarriage of justice."   *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).   "In order to have plain error under Crim.R. 52(B), there must be an error, the error must be an 'obvious' defect in the trial proceedings, and the error must have affected 'substantial rights,' meaning that the error must have affected the outcome of the trial."   *State v. Ryan*, 10th Dist. Franklin Nos. 08AP-481 and 08AP-482, 2009-Ohio-3235, ¶ 18, quoting *Barnes*.   The violation of an individual's double jeopardy or equal protection rights constitutes plain error.   *See State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31*; State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 2.

## B. Double Jeopardy

{¶16} J.T. argues that the firearm specification enhancing his commitment for the having weapons while under disability count violates his double jeopardy protections

under the United States and Ohio Constitutions. Specifically, J.T. contends that R.C. 2152.17(A), which allows a firearm specification to enhance a juvenile's having weapons while under disability adjudication, fails to provide him the same double jeopardy rights that adults enjoy under R.C. 2929.14(B)(1)(e), which prohibits imposing a firearm specification in addition to a having weapons while under disability conviction.

{¶17} The Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and Article I, Section 10 of the Ohio Constitution protect an individual from subsequent prosecutions and multiple punishments for the same offense. *Missouri v. Hunter*, 459 U.S. 359, 365-366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), citing *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Juveniles and adults have the same double jeopardy protections under both the United States and Ohio Constitutions. *In re A.G.*, 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, ¶ 9; *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 26. Because the constitutionality of multiple punishments depends on what punishments the legislative branch intended to impose, sentencing courts do not violate the Double Jeopardy Clause as long as they do not prescribe greater punishment than intended by the legislative branch. *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Hunter*.

{¶18} When clear, the General Assembly's express language in a statute is dispositive, and accordingly, our analysis begins and ends with the plain language of

R.C. 2152.17(A) and 2923.13. *State ex rel. Jones v. Conrad*, 92 Ohio St.3d 389, 392, 750 N.E.2d 583 (2001), quoting *Muenchenbach v. Preble Cty.*, 91 Ohio St.3d 141, 149, 742 N.E.2d 1128 (2001) (Moyer, C.J., dissenting) ("[W]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, * * * we rely only on what the General Assembly actually said."). The plain language of both statutes in this case allows the juvenile court to impose terms of commitment for having weapons while under disability and a firearm specification. J.T. points to no ambiguous language that would require us to use statutory interpretation methods and consider the fact that the General Assembly chose to repeal the adult version of the statute. *See State ex rel. M.A. v. Reed*, 10th Dist. Franklin No. 15AP-795, 2016-Ohio-3079, ¶ 12, citing *State v. Kreischer,* 109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496, syllabus ("[If] the General Assembly has plainly and unambiguously conveyed its legislative intent, there is nothing for a court to interpret or construe, and therefore, the court applies the law as written."). The General Assembly specifically authorized cumulative punishment under both statutes for juveniles and it is not within our power to ignore that clear intent. *See In re C.M.*, 8th Dist. Cuyahoga No. 99599, 2013-Ohio-5426, ¶ 68-71 (affirming the trial court's disposition, which included separate and consecutive commitments pursuant to a firearms specifications under R.C. 2152.17(A)(3) based on the statutes' plain language).

Because the language of R.C. 2152.17(A) is clear and remains good law, the General Assembly's actions concerning the former version of the adult statute have no bearing on J.T.'s case and do not implicate his double jeopardy rights.

**{¶19}** While we believe the foregoing discussion is dispositive of J.T.'s double jeopardy claim, we also believe it is necessary to address J.T.'s argument analogizing this issue to that raised in *In re A.G.* In that case, A.G. argued that, because R.C. 2941.25 allowed the merger of allied offenses for adults, he was also entitled to merger based on his right to equal double jeopardy protections. *In re A.G.* at ¶ 7. The Ohio Supreme Court agreed, finding that subjecting juveniles to multiple commitments for allied offenses of similar import violated their double jeopardy protections under the Ohio Constitution. *Id.* at ¶ 12. The Court concluded:

> By applying double-jeopardy protections to juveniles in a manner that ensures that they will receive only one term of commitment, rather than multiple terms of commitment, for conduct constituting allied offenses of similar import, juveniles who are fully rehabilitated and treated can be released at the conclusion of their minimum term, rather than be forced to serve a second, duplicative term for the *same conduct* for which they have been rehabilitated and treated.

(Emphasis added.) *Id.* at ¶ 14.

**{¶20}** *In re A.G.* is not applicable, however, because J.T.'s weapon while under disability adjudication and his firearm specification are not the same offense and do not punish the same conduct. A firearm specification is not an offense. *State v. Phillips,* 8th Dist. Cuyahoga No. 90124, 2008-Ohio-4367, ¶ 117; *State v. Ollison,* 10th Dist. Franklin No. 16AP-95, 2016-Ohio-8269, ¶ 33 ("[I]n Ohio, the General Assembly codified double jeopardy protections in the context of multiple punishments *for the same offense* in R.C. 2941.25."). (Emphasis added.) Instead, firearm specifications are "penalty enhancements." *State v. Ford,* 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, paragraph one of the syllabus. "Ohio courts have continuously held that a trial court does not violate the Double Jeopardy Clauses of the United States and Ohio Constitutions by sentencing a defendant to firearm specifications that are consecutive to the sentence imposed for the underlying offense." *Phillips* at ¶ 116. Like other

enhancement statutes, firearm specifications do not implicate the Double Jeopardy Clause because they enhance the punishment for the underlying offense and do not place the juvenile in jeopardy twice. *Witte v. United States,* 515 U.S. 389, 400, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), citing *Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); *see also State v. Russell*, 4th Dist. Athens No. 97 CA 37, 1998 Ohio App. LEXIS 3176, *84 (June 30, 1998) ("[A]lthough proof of a prior offense of violence is inherent in establishing that appellant committed the offense of having a weapon under disability and in establishing the specification, appellant does not receive a punishment for the specification. Rather, the specification enhances the sentence he would have otherwise received.").

{¶21} The juvenile court committed A.G. for aggravated robbery and kidnapping, two separate offenses. *In re A.G.,* 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, at ¶ 3. In this case, however, J.T. challenges not two separate offenses, but an offense and a sentence enhancement. J.T. was not subject to commitment for the firearm specification without the underlying offense and, therefore, his double jeopardy protections were not implicated. In other words, it was not possible for the juvenile court to commit J.T. for his firearm specification alone; his charge for having weapons while under disability was necessary for the enhancement to apply and, therefore, did not subject him to jeopardy twice and did not implicate his double jeopardy rights.

{¶22} Second, unlike *In re A.G.*, R.C. 2923.13 and 2152.17(A) do not proscribe the same conduct. R.C. 2923.13(A)(3), the statute under which J.T. was sentenced for

having weapons while under disability, prohibits a juvenile previously convicted of a felony from the acquiring, using, or carrying of a firearm. More specifically, the statute punishes J.T. for failing to abide by his terms of disability, one of which prohibited him from acquiring a firearm. Separately, R.C. 2152.17(A), the statute giving rise to J.T.'s firearm specification, enhances a juvenile's punishment for committing a crime with a firearm, regardless of the juvenile's felon status. While J.T. violated both statutes by possessing a firearm, the statutes punish separate types of conduct — violating terms of disability and committing a separate crime with a firearm — and aim to prevent separate types of harm. *See In re R.A.H.*, 8th Dist. Cuyahoga No. 101936, 2016-Ohio-8301, ¶ 2, 6 (following *In re A.G.* and finding merger appropriate because there was "no separate harm").

{¶23} Further, even if the statutes applicable to J.T.'s commitment are construed to punish the same conduct, that does not require the statutes to fail under the Double Jeopardy Clause.

> [S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct * * *, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court may impose cumulative punishment under such statutes in a single trial.

*Hunter*, 459 U.S. at 368-369, 103 S.Ct. 673, 74 L.Ed.2d 535. R.C. 2152.17(A) clearly evidences the General Assembly's intent to impose an additional term of commitment for

felonies committed with a firearm, and we will not strike the statute in light of that intent. The General Assembly repealed R.C. 2929.71 but not 2152.17(A). Contrary to J.T.'s assertions, that omission was not unintentional and will produce not absurd results, but instead the results that the General Assembly intended.

{¶24} Finally, unlike the offenses at issue in *In re A.G.*, the specification does not merge with a weapon while under disability count. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 219. We recognized that principle in *In re L.W.*, 8th Dist. Cuyahoga No. 99527, 2013-Ohio-5735, stating that "a firearm specification and its predicate offense are not allied offenses of similar import 'because a firearm specification is a penalty enhancement, not a criminal offense.'" *Id.* at ¶ 61, quoting *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525. As a result, *In re A.G.* is neither dispositive nor instructive for the matter before us.

{¶25} Because we find that R.C. 2152.17(A) is constitutional, we find it unnecessary to address the state's additional argument concerning R.C. 2929.14(B)(1)(e)'s applicability to the instant matter.

{¶26} We believe that our holdings here uphold the General Assembly's intent in enacting R.C. 2152.17(A), while remaining mindful of J.T.'s constitutional rights. If the General Assembly's omission in repealing R.C. 2152.17(A) was, indeed, unintentional, it is for that legislative body, not this court, to fix.

## C.    Equal Protection

{¶27} J.T. also argues that the absence of a weapons while under disability

exception in R.C. 2152.17(A) violates his right to equal protection under the law. In support of his argument, J.T. asserts that R.C. 2152.17(F) draws an age-based classification that is not rationally related to any state interests, specifically because it results in harsher, not more lenient, sentences in a system that is supposed to treat juveniles in a more tolerant manner. We disagree.

**{¶28}** The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution states, "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Ohio Constitution provides "essentially identical" equal protection rights in Article I, Section 2 and requires the same analysis of state legislation. *In re R.L.*, 8th Dist. Cuyahoga Nos. 84543, 84545, and 84546, 2005-Ohio-26, ¶ 8, quoting *Park Corp. v. Brook Park*, 102 Ohio St.3d 166, 2004-Ohio-2237, 807 N.E.2d 913*; Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 11. At the outset, it is important to note that "a statute is presumed constitutional unless shown beyond a reasonable doubt that it violates a constitutional provision," and we must apply all of the tools of statutory interpretation to uphold the challenged legislation if possible. *In re R.L.* at ¶ 8; *Conley v. Shearer*, 64 Ohio St.3d 284, 289, 1992-Ohio-133, 595 N.E.2d 862.

**{¶29}** "In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment * * *, courts apply different levels of scrutiny to different types of classifications." *State v. Aalim*, Slip Opinion No. 2017-Ohio-2956, ¶ 30, quoting *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). If

the legislation at issue violates a fundamental right or the rights of a suspect class, then it is subject to strict scrutiny. *Aalim* at ¶ 31, citing *State v. Williams*, 88 Ohio St.3d 513, 2000-Ohio-428, 728 N.E.2d 342. When the legislation does not infringe on a fundamental right or concern a suspect class, it is only subject to the rational-basis test. *Id.* Legislation that distinguishes groups of people based on age is only subject to the rational-basis test. *Gregory v. Ashcroft*, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). The rational-basis test "requires us to uphold the statutes if they are rationally related to a legitimate governmental purpose" and "grant 'substantial deference' to the General Assembly's predictive judgment." *Aalim* at ¶ 34, citing *Williams*. "Under rational-basis review, a decision by the state to treat individuals differently is invalidated only when it is 'based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify' it." *Aalim* at ¶ 35, quoting *Williams*.

{¶30} Juvenile courts "occupy a unique place in our legal system," and the state has different interests than it does in the adult criminal justice system. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 65. Juvenile courts "focus on the state's role as parens patriae and the vision that the courts would protect the wayward child from evil influences, save him from criminal prosecution, and provide him social and rehabilitative services." *Id.* at ¶ 66 (internal quotations omitted). Further, dispositions under juvenile law aim to "provide for the care, protection, and mental and physical development of children * * *, protect the public interest and safety, hold the

offender accountable for the offender's actions, restore the victim, and rehabilitate the offender."   R.C. 2152.01(A).

{¶31} In light of the unique characteristics of the juvenile justice system, Ohio courts have found a number of rational bases in sentencing juveniles differently than adults.   In *Aalim*, the juvenile argued that the age-based distinctions of the mandatory bindover procedures were not rationally related to the purposes of juvenile proceedings. *Aalim*, Slip   Opinion No. 2017-Ohio-2956 at ¶ 28.   The Ohio Supreme Court disagreed, finding that the "General Assembly enacted the mandatory-bindover procedure to provide special measures for extraordinary cases, involving older or violent offenders."   *Id.* at ¶ 36.   The court found that the procedures were rationally related "to the legitimate state interest of fighting rising juvenile crime because it allows the most serious juvenile offenders to be prosecuted in the general division, where harsher punishments are available."   *Id.*

{¶32} A number of Ohio appellate courts, including this court, analyzed a similar equal-protection issue concerning R.C. 2152.17(F).   *In re Z.S.*, 12th Dist. Clermont Nos. CA2005-02-010 and CA2005-02-011, 2005-Ohio-7033, ¶ 5; *In re Chappell*, 164 Ohio App.3d 628, 2005-Ohio-6451, 843 N.E.2d 823, ¶ 6 (7th Dist.); *In re Joshua R.C.*, 6th Dist. Erie Nos. E-05-016, E-05-017, and E-05-018, 2005-Ohio-6248, ¶ 5;   *In re R.L.*, 8th Dist. Cuyahoga Nos. 84543, 84545, and 84546, 2005-Ohio-26, ¶ 7; *In re Slater*, 9th Dist. Wayne Nos. 04CA0004 and 04CA0005, 2004-Ohio-4961, ¶ 4.   In those cases, the appellants argued that the statute violated their equal protection rights by not

requiring the juvenile courts to make the same required findings that adult courts are required to make when imposing consecutive terms of commitment. The courts rejected the appellants' arguments and held that Section (F) of the statute was rationally related to a legitimate state interest. Specifically, the Twelfth District Court of Appeals stated, "A rational basis exists for sentencing juveniles in a 'different fashion' than adults because the purposes of felony sentencing and juvenile sentencing are different, and juvenile courts are given wider discretion in the early release of offenders." *In re Z.S.* at ¶ 27, quoting *In re Slater* at ¶ 10. The Seventh District Court of Appeals found it "difficult, if not impossible" to compare the adult and juvenile systems, especially considering the fact that the statute aims to "provide for the care, protection, and mental and physical development of children." *In re Chappell* at ¶ 49. Similarly, we found that the differences in sentencing "juvenile and adult offenders * * * is a hard-fought and well-deserved distinction[.]" *In re R.L.* at ¶ 25. As a result, we saw "no reason to supplant that distinction * * * with one that would diminish the value society places on the development of youth." *Id.*

{¶33} Consistent with the reasoning and findings in those cases, R.C. 2152.17(A) is rationally related to the purposes of the juvenile justice system. It allows the state to operate as parens patriae for a longer period of time, during which it can protect the child from negative, outside influences as well as offer the juvenile both social and rehabilitative services. The juvenile court did not sentence J.T. to prison; it committed him to ODYS, where he can obtain treatment, support, and education, directly advancing

the state's interests as parens patriae. *See In re Chappell* at ¶ 49 ("[T]he consecutive punishments being imposed on adults and juveniles cannot easily be compared. Adults are sent to prison, possibly for their entire lives, while juveniles are detained by the Ohio Department of Youth Services until, at most, age 21."). Permitting a juvenile court to impose a firearm specification in addition to the underlying sentence for having weapons while under disability also serves the state's interest in protecting the public. *See In re C.S.* at ¶ 74 ("[H]arms suffered by victims are not dependent upon the age of the perpetrator."). Further, while the statute does impose a firearm specification in instances where the adult counterpart does not, it can, and does, result in more lenient treatment on juveniles by permitting juvenile court judges to use their discretion to impose a commitment between one and three years. The sentences for firearm specifications for adults, however, are mandatory and not subject to a judge's discretion. *See* R.C. 2941.145, and 2941.146.

{¶34} In conclusion, R.C. 2152.17(A) is rationally related to the legitimate governmental purpose of rehabilitating the juvenile as well as protecting the public. Therefore, it does not violate J.T.'s equal protection rights under the United States and Ohio Constitutions.

{¶35} J.T.'s second assignment of error is overruled.

## IV. The Effectiveness of J.T.'s Trial Counsel

{¶36} In his third assignment of error, J.T. contends that his trial counsel rendered ineffective assistance by failing to object to the juvenile court's imposition of the firearm

specification. "The benchmark for judging any claim of ineffective assistance must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance." *In re L.W.*, 8th Dist. Cuyahoga No. 99527, 2013-Ohio-5735, ¶ 31, citing *Strickland* at 687. Assistance by counsel is only considered constitutionally deficient when it falls below an objective standard of reasonableness, and reviewing courts "must indulge a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance." *Strickland* at 688.

**{¶37}** Because we found that imposing the firearm specification under R.C. 2152.17(A) was proper under J.T.'s second assignment of error, the failure to object to that issue by J.T.'s trial counsel does not constitute ineffective assistance of counsel for purposes of the Sixth and Fourteenth Amendments to the United States Constitution or Article I, Sections 10 and 16 of the Ohio Constitution.

**{¶38}** J.T.'s third assignment of error is overruled.

**{¶39}** Judgment affirmed. Case is remanded for the juvenile court to issue a nunc pro tunc entry to correct the clerical errors in the sentencing entry. Specifically, the juvenile court shall issue a nunc pro tunc entry to accurately reflect that it found J.T.'s counts for receiving stolen property to be merged as allied offenses and that it did

not impose and suspend a term of commitment for J.T.'s carrying a concealed weapon count.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said common pleas court, juvenile division, to carry this judgment into execution.    The finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated.

The court finds there were reasonable grounds for this appeal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS;
LARRY A. JONES, SR., J., CONCURS IN JUDGMENT ONLY