[Cite as *State v. Smith*, 2019-Ohio-4671.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,            :

                             No. 107899

    v.                                      :

NICHOLAS SMITH,                            :

    Defendant-Appellant.           :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** November 14, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-629459-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Ochocki, Assistant Prosecuting Attorney *for appellee.*

Timothy Young, Ohio Public Defender, and Lauren Hammersmith, Assistant State Public Defender, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Nicholas Smith ("Smith"), appeals his convictions after pleading guilty to aggravated robbery, grand theft, and failure to comply. For the reasons set forth below, we affirm his convictions, but remand the

matter for the issuance of a nunc pro tunc entry to correct the postrelease control notification in the trial court's sentencing journal entry.

{¶ 2} In September 2017, 16-year-old Smith was named in an eight-count complaint in Cuyahoga J.C. No. DL-17-114773, stemming from an incident that occurred on August 18, 2017. Counts 1 and 2 listed the offense of aggravated robbery (first-degree felonies). Count 3 listed the offense of grand theft (fourth- degree felony). Count 4 listed the offense of theft (fifth-degree felony).[1] Count 5 listed the offense of misdemeanor theft. Counts 6 and 7 listed the offense of failure to comply (third- and fourth-degree felonies). Count 8 listed the offense of having a weapon while under disability (third-degree felony) ("HWWUD").

{¶ 3} In February 2018, the juvenile court held a probable cause hearing on the matter. The following evidence was adduced at the hearing.

{¶ 4} On August 18, 2017, C.H. and A.R. were walking towards A.R.'s car, which was parked on West 65th Street near Bridge Avenue, when C.H. noticed two young men walking behind them. The young men were later identified as Smith, and codefendant, R.H. As C.H. and A.R. opened the car doors, A.R. was approached by a young man wearing jeans and a yellow and white shirt. He said "give me your keys or I'll shoot you in the f***ing head[.]" She replied, in shock, "are you serious?" To which he replied, "yes, I'm f***ing serious." A.R. then gave him her keys and started to back away with her hands raised.

---

[1] Each of Counts 1-4 carried both one- and three-year firearm specifications.

**{¶ 5}** As A.R. handed over her keys, C.H. threw her purse to the ground out of fear and asked the other young man wearing a dark green shirt if he wanted her purse. The male in the dark green shirt picked up her purse, got the keys from the other male, and they both drove away in A.R.'s car. A.R. called 911 after both males left the scene. C.H.'s cell phone was still in the purse that Smith and R.H. took with them.

**{¶ 6}** The responding police officer had C.H. log her Apple ID onto his iPhone, which allowed him to trace C.H.'s cell phone and advise dispatch of its location. Smith and R.H. were in custody within five minutes, which was after they got into a motor-vehicle accident while being pursued by police. The officers seized C.H.'s cell phone from Smith at the time of his arrest.

**{¶ 7}** Both C.H. and A.R. testified that they did not observe Smith or R.H. with a gun. When the 911 operator asked if there was a gun, A.R. responded, "no." The arresting officer did not find a gun on Smith's person. During the state's closing argument, the state conceded that there was no evidence of a firearm being displayed at the time of the verbal threats.

**{¶ 8}** After the hearing, the juvenile court found sufficient probable cause on three of the felony counts. The court found probable cause to believe Smith committed the acts that would be the crimes of aggravated robbery (two counts) and grand theft if committed by an adult. The court did not find probable cause with respect to the remaining felony counts — theft, failure to comply (two counts), and HWWUD. The court further found that there was not reasonable cause to believe

that Smith had a firearm on or about his person or under his control at the time of the incident.

{¶ 9} Thereafter, an amenability hearing was held to determine if Smith was amenable to care or rehabilitation within the juvenile court system. The juvenile court found that he was not amenable and transferred the matter to the general criminal division of the Cuyahoga County Court of Common Pleas.

{¶ 10} Smith was subsequently indicted on the same eight counts in Cuyahoga C.P. No. CR-18-629459-A, along with an additional count of escape.[2] In September 2019, Smith pled guilty to an amended count of aggravated robbery with a one-year firearm specification, and an amended count of grand theft. He also pled guilty to one count of failure to comply and escape. The remaining counts and specifications were nolled. The trial court sentenced Smith to an aggregate of nine years in prison.

{¶ 11} Smith now appeals, raising the following three assignments of error for review:

### Assignment of Error No. 1

The juvenile court violated [Smith's] right to due process when it found probable cause for aggravated robbery in the absence of sufficient, credible, and competent evidence that [Smith] had a gun.

### Assignment of Error No. 2

---

[2] The escape charge is not at issue in the instant appeal and arises from a different juvenile case.

[Smith's] statutory and constitutional rights were violated when he was indicted and convicted on charges that were never transferred to the Cuyahoga County Court of Common Pleas.

Assignment of Error No. 3

[Smith] was deprived of his constitutional right to the effective assistance of counsel when counsel failed to object to the indictment and conviction of charges that were not properly transferred from the juvenile court.

Probable Cause — Aggravated Robbery

{¶ 12}  In the first assignment of error, Smith argues that the juvenile court's probable cause determination on the aggravated robbery offenses were against the sufficiency and manifest weight of the evidence.

{¶ 13}  The Ohio Supreme Court has found that a juvenile court's probable cause determination in a bindover proceeding involves questions of both fact and law.  *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 51.  An appellate court will "defer to the [juvenile] court's determinations regarding witness credibility, but [will] review de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged."  *Id.*  In meeting the probable cause standard, "'the state must produce evidence that raises more than a mere suspicion of guilt, but *need not* provide evidence proving guilt beyond a reasonable doubt.'"  (Emphasis sic.)  *Id.* at ¶ 42, quoting *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001).

{¶ 14}  Here, the juvenile court found probable cause for two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides in pertinent part:  "[n]o person, in attempting or committing a theft offense * * * or in fleeing

immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" Smith takes issue with the juvenile court's finding of probable cause on these two counts because there was no evidence that Smith possessed a gun during the incident.

{¶ 15} We note, however, that "[p]roof of the existence of a deadly weapon does not require that the state actually come into possession of the weapon — the fact required to be proved may be inferred from other evidence." *State v. Hawkins*, 8th Dist. Cuyahoga No. 53026, 1987 Ohio App. LEXIS 9612, 5 (Nov. 12, 1987), citing *State v. Boyce*, 21 Ohio App.3d 153, 154, 486 N.E.2d 1246 (10th Dist. 1985). *See also State v. Haskins*, 6th Dist. Erie No. E-01-016, 2003-Ohio-70, ¶ 41.

{¶ 16} A review of the record in the instant case reveals that as C.H. and A.R. opened the doors to A.R.'s car, A.R. was approached by a young man who said "give me your keys or I'll shoot you in the f***ing head[.]" She replied, in shock, "are you serious?" To which he replied, "yes, I'm f***ing serious." A.R. then gave him her keys and started to back away with her hands raised. While A.R. handed over her keys, C.H. threw her purse to the ground out of fear and asked the other male if he wanted her purse. He picked up her purse and both males drove away in A.R.'s car.

{¶ 17} While the victims did not observe a gun and the police did not locate a gun, both victims testified that the one male said, "give me your keys or I'll shoot you in the f***ing head" when they took A.R.'s car. These facts are sufficient to

establish that there existed probable cause to believe Smith committed aggravated robbery as charged in Counts 1 and 2 of the complaint.

{¶ 18} Accordingly, the first assignment of error is overruled.

Subject-Matter Jurisdiction

{¶ 19} In the second assignment of error, Smith argues the general division lacked subject-matter jurisdiction to indict him on Counts 4, 6, 7, and 8 and the gun specification because the juvenile court found no probable cause existed to believe Smith committed these charges.

{¶ 20} Initially, we note that three of the four counts that Smith takes issue with were nolled by the prosecutor as part of a plea agreement. With regard to Count 7, failure to comply, the juvenile court found the state did not present sufficient evidence to find probable cause that Smith committed the offense charged. However, the juvenile court found that Smith was not amenable and transferred the matter to the general criminal division. Thereafter, Smith was indicted in a nine-count indictment that included all of the offenses listed in the juvenile complaint.

{¶ 21} The Ohio Supreme Court has ruled that absent a proper bindover proceeding in the juvenile court, the trial court lacks subject-matter jurisdiction and any conviction thereafter is void ab initio. *State v. Wilson*, 73 Ohio St.3d 40, 44, 652 N.E.2d 196 (1995).

{¶ 22} R.C. 2152.12 governs a juvenile court's authority to transfer a child to the general division of the common pleas court. R.C. 2152.12(A) governs mandatory bindovers and 2152.12(B) governs discretionary bindovers. Smith was transferred

under a discretionary bindover, which "'as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety.'" *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 10, quoting *State v. Hanning*, 89 Ohio St.3d 86, 728 N.E.2d 1059 (2000).

{¶ 23} In instances of discretionary transfers, the juvenile court has additional obligations prior to transferring the matter to the general division.

> [T]he juvenile court is also to determine the age of the child and whether probable cause exists to believe that the juvenile committed the act charged. R.C. 2152.10(B) and 2152.12(B)(1) and (2). However, if probable cause exists and the child is eligible by age, the juvenile court must then continue the proceeding for a full investigation. R.C. 2152.12(C) and Juv.R. 30(C). This investigation includes a mental examination of the child, a hearing to determine whether the child is "amenable to care or rehabilitation within the juvenile system" or whether "the safety of the community may require that the child be subject to adult sanctions," and the consideration of 17 other statutory criteria to determine whether a transfer is appropriate. Juv.R. 30(C); R.C. 2152.12(B), (C), (D), and (E).

*In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 12.

{¶ 24} In support of his argument that the general division lacked subject-matter jurisdiction, Smith relies on *State v. Rosser*, 8th Dist. Cuyahoga No. 104624, 2017-Ohio-5572. In *Rosser*, the juvenile court, prior to transferring Rosser to the general division, failed to conduct an amenability hearing as required by R.C. 2152.12. The court stated:

> While the amenability hearing may have been a futile act, the failure to conduct such hearing was a jurisdictional impediment that deprived

the general division of jurisdiction over the case. Absent a proper bindover proceeding in the juvenile court, the common pleas court lacks subject-matter jurisdiction over the case and any conviction obtained there is void ab initio. *State v. Wilson*, 73 Ohio St.3d 40, 44, 652 N.E.2d 196 (1995).

Accordingly, Rosser's counsel was deficient for failing to request dismissal of the indictment because the juvenile court improperly transferred the case to the general division. Because the general division did not have jurisdiction over the matter, Rosser's convictions are reversed and the case is remanded to the juvenile court to conduct an amenability hearing pursuant to R.C. 2152.12(B).

*Id.* at ¶ 28-29.

{¶ 25} *Rosser*, however, is distinguishable because the juvenile court in the instant case held an amenability hearing. Therefore, the matter was not improperly transferred to the general division, and the general division has proper jurisdiction over the matter.

{¶ 26} We find this court's decision in *State v. Frazier*, 8th Dist. Cuyahoga Nos. 106772 and 106773, 2019-Ohio-1433, *discretionary appeal not allowed by* 2019-Ohio-3331, 2019 Ohio LEXIS 1662 (Aug. 20, 2019), instructive. In *Frazier*, the defendant, Frazier, was charged in a 28-count complaint in juvenile court for his involvement in seven separate robberies committed by Frazier and his fellow gang members. Frazier was charged with eight counts of aggravated robbery, eight counts of robbery, eight counts of kidnapping, three counts of grand theft, and one count of felonious assault. Several of these counts carried one- and three-year firearm specifications and criminal gang activity specifications. *Id.* at ¶ 1-2.

{¶ 27} After a probable cause hearing, the juvenile court found probable cause on 21 of the 28 counts. The court did not find probable cause on Counts 7

through 16. The juvenile court also found that the state had failed to produce sufficient evidence to transfer Frazier's case under a mandatory bindover and converted the state's bindover motion to a discretionary bindover. Thereafter, an amenability hearing was held to determine if Frazier was amenable to treatment within the juvenile court system. The juvenile court found that he was not amenable, granted the state's bindover motion, and transferred the matter to the general division. *Id.* at ¶ 3.

{¶ 28} Frazier was indicted in general division court on all 28 counts as originally charged in the juvenile complaint. After plea negotiations, Frazier pled guilty to an amended indictment, which included four counts of aggravated robbery, one count of aggravated robbery with a three-year firearm specification, one count of aggravated robbery with a one-year firearm specification, and one count of robbery. The remaining counts were nolled. *Id.* at ¶ 4-5.

{¶ 29} On appeal, Frazier argued that the general division court lacked subject-matter jurisdiction to indict and convict him on Counts 7 through 13 because those charges had already been dismissed for lack of probable cause. This court disagreed with Frazier, finding that the general division had jurisdiction over all counts transferred by the juvenile court, including the counts the juvenile court found lacked probable cause. *Frazier*, 8th Dist. Cuyahoga Nos. 106772 and 106773, 2019-Ohio-1433, at ¶ 47. This court reasoned:

> notwithstanding the juvenile court's finding as to probable cause on Count 7, the adult court had jurisdiction over Count 7, and all 28 counts, pursuant to R.C. 2152.12(I)[, which provides:]

"Upon the transfer of a case under division (A) or (B) of this section, the juvenile court shall state the reasons for the transfer on the record, * * *. The transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint, and, upon the transfer, all further proceedings pertaining to the act charged shall be discontinued in the juvenile court, and the case then shall be within the jurisdiction of the court to which it is transferred as described in division (H) of section 2151.23 of the Revised Code."

* * *

Therefore, to the extent that [Frazier] argues that Count 7 was dismissed by the juvenile court, this is not an accurate procedural characterization. Pursuant to R.C. 2152.12(I), the juvenile court was required to hold a hearing on the state's bindover motion. At this hearing, the juvenile court was tasked with determining whether or not there was probable cause that [Frazier] committed the acts charged. If the juvenile court found probable cause, the juvenile court abates jurisdiction and transfers the matter to the adult court pursuant to R.C. 2152.12(I).

To this extent, R.C. 2152.12(I) does not afford a juvenile court with the authority to dismiss counts on the basis of whether or not the state has established probable cause. Indeed, the state's bindover motion, pursuant to R.C. 2152.10, does not allow or explicitly empower the juvenile court with this authority. The issue before the juvenile court is whether or not "there is probable cause to believe that the child committed the act charged." R.C. 2152.12(B)(2). If the juvenile court finds probable cause, the bindover motion is granted, and the matter is transferred to the adult court. *See State v. Whisenant*, 127 Ohio App.3d 75, 81, 711 N.E.2d 1016 (11th Dist.1998) (noting that the bindover proceedings are not adjudicative in that the juvenile's guilt or innocence is not at issue).

However, in our review of the record, it appears that the juvenile court, at the close of the state's presentation of evidence at the probable cause hearing, did dismiss the counts in which it found the state did not establish probable cause. At the probable cause hearing, the juvenile court stated that [Frazier] would return for an "amenability hearing on the charges that I indicated with the [other] charges being dismissed." (Tr. 360.)

The juvenile court's dismissal of these counts is outside the scope of the probable cause hearing. We note that in limited circumstances, a juvenile court may dismiss a complaint pursuant to Juv.R. 9(A) outside of a formal court hearing. *See In re D.S.*, 152 Ohio St.3d 109, 2017-Ohio-8289, 93 N.E.3d 937. However, a juvenile court's ability to dismiss a complaint, or dismiss particular counts within the complaint, does not appear to extend to a probable cause hearing. *See id.* at ¶ 11.

Moreover, we note that a grand jury may consider and even return an indictment on charges that were not originally filed in the juvenile complaint. *Whisenant*, 127 Ohio App.3d 75, 81, 711 N.E.2d 1016, at fn. 4.

> '"It is well established in Ohio jurisprudence that upon transfer from juvenile court, a grand jury is authorized to return a proper indictment on the facts submitted to it, and is not confined to the charges originally filed in the juvenile court. *State v. Adams*, 69 Ohio St.2d 120, 431 N.E.2d 326 (1982), paragraph two of the syllabus. To confine an indictment solely to the charges presented from juvenile court would improperly restrict the power of the grand jury to review the facts and indict on the charge or charges it feels is appropriate in any given case."'

*State v. Beauregard*, 8th Dist. Cuyahoga No. 101418, 2015-Ohio-1021, ¶ 28, quoting *State v. Foust*, 3d Dist. Crawford No. 3-07-11, 2007-Ohio-5767, ¶ 17.

*Id.* at ¶ 37-42.

{¶ 30} In reaching its decision, the *Frazier* court also relied on this court's decision in *State v. Mays*, 2014-Ohio-3815, 18 N.E.3d 850 (8th Dist.). *Mays* is a case where the defendant was charged in juvenile court with offenses that subjected him to a mandatory bindover. The juvenile court granted the state's bindover motion, and thereafter transferred the entirety of the complaint to the adult court, which included charges that subjected Mays to a discretionary bindover.

{¶ 31} On appeal, *Mays* argued that the juvenile court erred when it transferred nonmandatory offenses along with the mandatory offenses. This court disagreed, finding that:

> "because the offenses in this matter were committed during the same course of conduct, the [juvenile] court had the authority to transfer the entire case pursuant to R.C. 2152.12(I) once it found sufficient probable cause to warrant a mandatory transfer of Count 2 to the adult court. *See State v. Brookshire*, 2d Dist. Montgomery No. 25853, 2014-Ohio-1971, ¶ 14 (holding that when multiple offenses arise from the same 'course of conduct' and the juvenile court properly transfers the mandatory transfer offense to the adult court, all further proceedings on the remaining offenses are discontinued in the juvenile court pursuant to R.C. 2152.12(I))."
>
> *Mays* at ¶ 28. If the matter was not transferred in its entirety, judicial economy would be jeopardized and the matter would be split into two proceedings in two separate courts on the same set of facts and circumstances. *Id.*, citing *State v. Washington*, 2d Dist. Montgomery No. 20226, 2005-Ohio-6546, ¶ 26.

*Frazier* at ¶ 45.[3]

{¶ 32} The *Frazier* court determined that all of the charges in the juvenile complaint, including Count 7, were part of "the same course of conduct" because the similarity of the offenses could be considered as part of a single crime spree. *Frazier,* 8th Dist. Cuyahoga Nos. 106772 and 106773, 2019-Ohio-1433, at ¶ 47.

---

[3] In *Mays*, we noted that the "'same course of conduct' [has] been defined as 'offenses that through their similarity, regularity and time between them are concluded to be part of a single episode, spree, or ongoing series of offenses.'" *Id.* at fn. 2, quoting *United States v. Sheehan*, Mont. No. 09-13-M-DWM, 2009 U.S. Dist. LEXIS 99800 (Oct. 27, 2009).

**{¶ 33}** Likewise, in the instant case, the juvenile court did not have the authority to dismiss counts on the basis of whether or not the state has established probable cause. Therefore, Smith's argument that Counts 4, 6, 7, and 8 were dismissed by the juvenile court is not an accurate procedural characterization. *Frazier* at ¶ 38. Once the matter was transferred to the general division under R.C. 2152.12(I), it was within the grand jury's province to consider and even return an indictment on charges that were not originally filed in the juvenile complaint. As we found in *Frazier*, R.C. 2152.12(I) provides the general division with jurisdiction over Count 7 (even with the juvenile court's finding as to probable cause) and the other eight counts. *Id.* at ¶ 38. Moreover, Count 7 was part of a "course of conduct." Indeed, all of the charges in Smith's juvenile complaint were part of "the same course of conduct" because the similarity of the offenses are considered as part of a single crime spree. *Id.* at ¶ 47, citing *Mays*; *State v. Smith*, 9th Dist. Summit No. 26804, 2015-Ohio-579. As a result, the general division had jurisdiction over all the counts in the indictment, including Counts 4, 6, 7, and 8.

**{¶ 34}** Accordingly, the second assignment of error is overruled.

### Ineffective Assistance of Counsel

**{¶ 35}** In the third assignment of error, Smith argues that he was denied the effective assistance of counsel because defense counsel did not object to the indictment or subsequent convictions of the charges that were not properly transferred from juvenile court proceedings.

{¶ 36} In order to establish a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 660 N.E.2d 456 (1996). To show that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus; *Strickland*.

{¶ 37} Having found that the general division had jurisdiction over the charges the juvenile court found lacked probable cause, we cannot say defense counsel was ineffective for not objecting to the indictment.

{¶ 38} Therefore, the third assignment of error is overruled.

{¶ 39} We sua sponte note that the advisement of postrelease control in the sentencing entry does not comply with the notification requirements set forth by the Ohio Supreme Court in *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 1, where the court held that:

> to validly impose post-release control when the court orally provides all the required advisements at the sentencing hearing, the sentencing entry must contain the following information: (1) whether post-release control is discretionary or mandatory, (2) the duration of the post-release-control period, and (3) a statement to the effect that the Adult Parole Authority ("APA") will administer the post-release control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of post-release control will subject the offender to the consequences set forth in that statute.

*See also State v. Johnson,* 155 Ohio St.3d 441, 2018-Ohio-4957, 122 N.E.3d 126, ¶ 6. However, a review of the sentencing hearing transcript reveals that the trial court properly advised Smith of the postrelease control notification requirements. "Because Ohio courts speak through their journal entries, it is essential for those journal entries to be an accurate and truthful reflection of the court's proceedings." *In re J.T.,* 2017-Ohio-7723, 85 N.E.3d 763, ¶ 9 (8th Dist.), citing *State ex rel. Worcester v. Donnellon,* 49 Ohio St.3d 117, 118, 551 N.E.2d 183 (1990).

{¶ 40} A court may correct a clerical mistake in a judgment entry to accurately reflect the case's proceedings at any time. Crim.R. 36; *In re F.M.,* 8th Dist. Cuyahoga No. 93255, 2009-Ohio-6317, ¶ 9. A "clerical mistake" is "'a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment.'" *State ex rel. Cruzado v. Zaleski,* 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19, quoting *State v. Brown,* 136 Ohio App.3d 816, 819-820, 737 N.E.2d 1057 (3d Dist.2000).

{¶ 41} When clerical mistakes are raised on appeal, Ohio appellate courts may remand the issue to the trial court and direct that the court correct the misstatement through a nunc pro tunc entry. App.R. 9(E); *State v. Peacock,* 8th Dist. Cuyahoga No. 102567, 2015-Ohio-4697; *In re F.M.* "A nunc pro tunc order records acts done at a former time that were not then carried into the record. A nunc pro tunc order may be used to make the record reflect the truth, but not to reflect something that did not occur." *State v. Kelly,* 8th Dist. Cuyahoga No. 102413, 2015-

Ohio-5272, ¶ 46, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659.

**{¶ 42}** Accordingly, we remand this matter to the trial court for the limited purpose to correct its October 15, 2018 journal entry reflecting the proper postrelease control notification requirements.

**{¶ 43}** Judgment is affirmed. The case is remanded to the trial court for the issuance of a nunc pro tunc entry to correct the postrelease control notification requirements.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR. J., and
KATHLEEN ANN KEOUGH, J., CONCUR