[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Smith*, Slip Opinion No. 2022-Ohio-274.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-274

THE STATE OF OHIO, APPELLEE, *v*. SMITH, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Smith*, Slip Opinion No. 2022-Ohio-274.]

*A finding of probable cause is a jurisdictional prerequisite under R.C. 2152.12 to transferring a child to adult court for prosecution of an act charged—A juvenile court may transfer a case or a matter to adult court, but the adult court's jurisdiction is limited to the acts charged for which probable cause was found.*

(No. 2019-1813—Submitted March 31, 2021—Decided February 3, 2022.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 107899, 2019-Ohio-4671.

————————————

**BRUNNER, J.**

{¶ 1} Ohio juvenile law is organized around the tenet that children who are charged with acts that would be felonies if committed by adults must be recognized by courts as children when adjudicating and determining the consequences to be

imposed on them if they are found to have committed those acts. In the statutory scheme for juvenile justice, "[i]nstead of 'defendants,' children are 'respondents' or simply 'juveniles'; instead of a trial, children receive 'hearings'; children are not found guilty, they are 'adjudicated delinquent'; and instead of sentencing, children's cases are terminated through 'disposition.' " *State v. Hanning*, 89 Ohio St.3d 86, 89, 728 N.E.2d 1059 (2000). Legislatures and courts, including this court, have recognized that the special interests involved in juvenile cases cannot be adequately addressed by the adult-criminal-justice system, but they have also recognized that juveniles accused of crimes must be afforded the same procedural-due-process protections as adult criminal defendants, *see In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (establishing that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone"), *abrogated on other grounds as recognized by Allen v. Illinois*, 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986).

{¶ 2} This court has also noted that "[j]uvenile law and criminal law are not synonymous," *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, 73 N.E.3d 448, ¶ 13, and that "the very purpose of the state juvenile code is 'to avoid treatment of youngsters as criminals and insulate them from the reputation and answerability of criminals,' " *id.* at ¶ 19, quoting *In re Agler*, 19 Ohio St.2d 70, 80, 249 N.E.2d 808 (1969). Stated another way, the juvenile-justice system must provide for accountability; yet it must also meet society's need to secure its future through its youth. Thus, the juvenile-justice system must hold juveniles accountable for their actions and, whenever possible, provide them with opportunities for learning and growth toward a better path. The juvenile court was created by statute, and consequently, its authority is determined by that which is conferred on it by the legislature. *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, 44 N.E.3d 239, ¶ 14. Today, this court is tasked with determining the legal effect of a juvenile court's

2

order transferring ("binding over") charges filed in juvenile court to the jurisdiction of the general division of the court of common pleas ("adult court").

> Juvenile courts hold a "unique place in our legal system." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 65. They are legislative creatures that "eschewed traditional, objective criminal standards and retributive notions of justice." *Id.* at ¶ 66. The overriding purposes for juvenile dispositions "are to provide for the care, protection, and mental and physical development of children subject to [R.C. Chapter 2152], protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A). In contrast, the purposes of felony sentencing "are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A).[1] In summary, juvenile adjudication differs from criminal sentencing—one is civil and rehabilitative, the other is criminal and punitive.

(First brackets sic.) *Hand* at ¶ 14. We should respect those stated statutory purposes when examining, applying, and, when necessary, interpreting the statutes for juvenile bindovers for prosecution in adult court. This bindover process is based first on the juvenile court's finding of "probable cause to believe that the child committed the act charged," R.C. 2152.12. A juvenile court's finding of probable cause and subsequent bindover of the child are not an open invitation for the adult

---

1. This version of R.C. 2929.11(A) was in effect at the time of Smith's alleged acts, but this section of the Revised Code was amended on October 29, 2018, to add "promote the effective rehabilitation of the offender" to the purposes of felony sentencing. 2018 Am.Sub.S.B. No. 66.

court to treat the child as if his or her bindover to adult court is the child's first encounter with a tribunal for the acts named in the bindover order—there are limitations. Juvenile bindover does not open the door to prosecution in adult court for any charge the state might later seek in an indictment. Rather, because a juvenile court's finding of probable cause as to any particular "act charged" is what triggers a possible transfer to adult court, when a juvenile court determines that there is no probable cause for an act charged, the adult court has no jurisdiction over that charge.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Facts

{¶ 3} Appellant, Nicholas Smith, was 16 years old when he was charged, in an eight-count complaint filed in the juvenile court, with committing acts that occurred on August 18, 2017. Smith and another juvenile, R.H., were alleged to have confronted two women who were about to enter a car parked in front of the women's home on West 65th Street in Cleveland. R.H. was alleged to have told the woman who had the keys to the car, "Give me your keys or I'll shoot you in the f* * *ing head." That woman surrendered her keys, and the other woman said, "Do you want my purse?" and she threw her purse on the ground. Smith allegedly grabbed the purse, which contained the woman's cellphone, and Smith and R.H. drove away in the other woman's car. The women called the police. By tracking the cellphone, the police were able to locate it, along with Smith and R.H.

{¶ 4} Smith and R.H. were taken into custody by police within minutes. The tracked cellphone was found in Smith's pocket at the time of his arrest.

### B.  Juvenile-court proceedings

{¶ 5} The juvenile complaint against Smith alleged in Counts 1 and 2 that Smith committed the category-two offense of aggravated robbery (with predicate theft offenses), one count as to each woman, while possessing a deadly weapon and either displaying it, brandishing it, or indicating that he possessed it or was using

4

it. *See* R.C. 2152.02(BB)(1) (defining "category two offense" as including the offense set forth in R.C. 2911.01, aggravated robbery). Because firearm specifications were attached to the category-two offenses and Smith was alleged to have committed the offenses when he was 16 years old, binding him over to adult court would have been mandatory for Counts 1 and 2 upon a finding of probable cause. R.C. 2152.10(A)(2)(b).

{¶ 6} Count 3 alleged grand theft, a fourth-degree felony, for stealing the vehicle of one of the women. Count 4 alleged a fifth-degree felony, for theft of the credit cards of one of the women. Counts 3 and 4 were both alleged to have been committed with a firearm.

{¶ 7} Count 5 alleged a first-degree misdemeanor, for taking the purse and/or cellphone of one of the women, and Count 6 alleged a fourth-degree felony for failure to comply with a signal of a police officer—for operating a motor vehicle so as to willfully elude or flee from a police officer while fleeing after committing a felony. Count alleged a third-degree felony for failure to comply with a signal of a police officer—for operating a motor vehicle so as to elude or flee from a police officer and causing a substantial risk of serious physical harm to persons or property. Count 8 alleged a third-degree felony for having a weapon while under disability, for possessing a firearm after being adjudicated delinquent for an offense that would have been a felony offense of violence if committed by an adult.

{¶ 8} On February 9, 2018, the juvenile court conducted a joint probable-cause hearing regarding Smith and R.H. pursuant to R.C. 2152.10 and 2152.12 and Juv.R. 30. The two women and three police officers testified.

{¶ 9} In a March 14, 2018 entry, the juvenile court concluded that Smith was 16 years old at the time of the charged conduct and that there was probable cause to believe that Smith had committed acts that if committed by an adult would be felonies. The juvenile court found probable cause to believe that Smith had committed the acts that would be aggravated robberies in violation of R.C.

2911.01(A)(1), first-degree felonies, if committed by an adult (Counts 1 and 2) and grand theft in violation of R.C. 2912.02(A)(1), a fourth-degree felony, if committed by an adult (Count 3).

{¶ 10} The juvenile court did not find probable cause with respect to the remaining felony counts—theft (Count 4), failure to comply (Counts 6 and  ), and having a weapon while under disability (Count 8).  The juvenile court also found that there was not probable cause to believe that Smith had had a firearm on or about his person or under his control at the time of the acts charged or that he had indicated that he possessed a firearm.  The juvenile court ordered the matter to be "continued for amenability hearing * * * upon the State of Ohio's motion for order to relinquish jurisdiction for purposes of criminal prosecution pursuant to R.C. 2152.12."

{¶ 11} On April 9, 2018, the juvenile court conducted a hearing to determine whether Smith was amenable to care or rehabilitation within the juvenile system and concluded that he was not.  Pursuant to R.C. 2152.12(B), the juvenile court transferred the matter to the adult court on June 1, 2018, finding that "the safety of the community may require that the child be subject to adult sanctions." Having found no probable cause for Counts 4 and 6 through 8 and no probable cause for the firearm specifications relating to Counts 1 through 4, the juvenile court transferred Smith's case to the adult court for Smith's prosecution as an adult for the acts for which the juvenile court had found probable cause—Counts 1, 2, and 3, with no firearm specifications, and Count 5—the misdemeanor.  Smith alleges that because the juvenile court did not determine his amenability to care or rehabilitation within the juvenile system as to Counts 4 and 6 through 8 and the firearm specifications as to Counts 1 through 4, the adult court was authorized to prosecute him only as to Counts 1, 2, 3, and 5 of the juvenile-court complaint, with no firearm specifications.

## C. Adult-court proceedings

**{¶ 12}** After the case was transferred to the adult court, the state obtained a grand-jury indictment against Smith on eight counts that were identical to those that had been alleged in the original juvenile complaint, including those for which the juvenile court had found no probable cause and including firearm specifications on the aggravated-burglary counts and the grand-theft and theft counts. The state also obtained an additional charge against Smith, a second-degree-felony count of escape, which had been transferred to the adult court in a separate juvenile-court proceeding. The escape count alleged that Smith had left a detention facility and committed a felony. In total, Smith, who was by this time 17 years old, was facing the possibility of serving over 50 years in adult prison on the charges.

**{¶ 13}** In September 2018, Smith entered into an agreement with the state and pled guilty to one amended count of aggravated robbery, with a one-year firearm specification, and one amended count of grand theft, with no firearm specification. He also pled guilty to the third-degree-felony count of failure to comply and to the escape charge. The remaining counts and specifications were dismissed. The adult court sentenced Smith to an aggregate term of nine years in prison, and it ordered the sentences for grand theft and escape to be served concurrently with the other sentences.

## D. Appellate-court proceedings

**{¶ 14}** On appeal, Smith argued that his "statutory and constitutional rights were violated when he was indicted and convicted on charges that were never transferred to the [adult court]." *See* 2019-Ohio-4671, ¶ 11. Specifically, he argued that the adult court lacked subject-matter jurisdiction to consider charges related to acts for which the juvenile court had found no probable cause, i.e., Counts 4 and 6 through 8, and the firearm specifications. Smith argued that a juvenile court may not transfer subject-matter jurisdiction to an adult court without conducting an amenability hearing and that an amenability hearing may not be conducted without

first making a finding of probable cause. Smith relied on *State v. Rosser*, 8th Dist. Cuyahoga No. 104624, 2017-Ohio-5572, in which the court stated:

> In this case, the juvenile court, prior to transferring Rosser pursuant to R.C. 2151.12(B) [sic, R.C. 2152.12(B), discretionary bindover], concluded that Rosser was over the age of 14 at the time of the offense, and there was probable cause to believe he committed the act charged. However, it failed to conduct an amenability hearing as required. While the amenability hearing may have been a futile act, the failure to conduct such hearing was a jurisdictional impediment that deprived the general division of jurisdiction over the case. Absent a proper bindover proceeding in the juvenile court, the common pleas court lacks subject-matter jurisdiction over the case and any conviction obtained there is void ab initio.

*Id.* at ¶ 28, citing *State v. Wilson*, 73 Ohio St.3d 40, 44, 652 N.E.2d 196 (1995).

{¶ 15} The Eighth District rejected Smith's assertion that *Rosser* was controlling law and upheld the adult court's holding that it had jurisdiction over all the charges that were originally heard by the juvenile court, some of which the juvenile court had found were not supported by probable cause. The Eighth District instead applied its holding in *State v. Frazier*, 8th Dist. Cuyahoga Nos. 106772 and 106773, 2019-Ohio-1433, that the adult court had jurisdiction over "all counts transferred by the juvenile court, including the counts the juvenile court had found lacked probable cause." 2019-Ohio-4671 at ¶ 26, 29. The appellate court's rationale was that all the counts against Smith arose out of the same course of conduct and were based on acts that were part of a single crime spree, and "[a]s a result, the [adult court] had jurisdiction over all the counts in the indictment,

8

including Counts 4 [theft], 6 [failure to comply], [failure to comply], and 8 [having a weapon while under disability].” *Id.* at ¶ 33.

{¶ 16} We accepted Smith's discretionary appeal from that judgment. Smith asserts two propositions of law:

> (1) For discretionary bindovers, a juvenile court cannot hold an amenability hearing on charges upon which a finding of no probable cause was made.
>
> (2) For cases that involve both mandatory and discretionary bindovers, R.C. 2152.12(I) does not allow the transfer of charges where a no probable cause finding was made, regardless of whether there was an amenability hearing.

{¶ 17} Together, these two propositions of law assert that the adult court lacked jurisdiction to consider the charges for which the juvenile court found no probable cause. We discuss and analyze that assertion below.

## II. LAW AND ANALYSIS

### A. History of the juvenile-justice system and transfer proceedings

{¶ 18} One of the primary reasons for establishing juvenile courts, which began to be established in the United States at the end of the 19th century, was to provide protection for those unable to care for themselves. *See Hanning*, 89 Ohio St.3d at 88, 728 N.E.2d 1059. Since 2002, R.C. 2152.01(A) has explicitly described the purpose of juvenile-court dispositions:

> The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public

interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender. These purposes shall be achieved by a system of graduated sanctions and services.

**{¶ 19}** Within the statutes governing juveniles, R.C. 2151.01 specifically provides that the sections of R.C. Chapter 2151 are to be "liberally interpreted and construed so as to"

provide judicial procedures through which Chapters 2151. and 2152. of the Revised Code are executed and enforced, and in which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced.

R.C. 2151.01(B). We analyze Smith's propositions of law according to these statutory principles calling for fairness and constitutionality of process for youths accused of crimes, beginning with a review of the recent history of the juvenile-bindover statutes.

**{¶ 20}** Beginning in the 1970s, the United States began instituting policies purporting to be "tough on crime" and welcomed in an era of mass incarceration.[2] The Brennan Center for Justice estimated in 2016 that there were "2.3 million

---

2. Ohio Wesleyan University: From Our Perspective, Shari Stone-Mediatore, Ph.D., *Tough Questions for Tough-on-Crime Policies*, https://www.owu.edu/news-media/from-our-perspective/tough-questions-for-tough-on-crime-policies/ (accessed July 9, 2021) [https://perma.cc/7M85-TVR7] ("Since the 1970s, public safety in America has been pursued through 'tough-on-crime' policies: stiff criminal codes, long prison sentences, laws that facilitate police search and seizure, laws that make it more difficult to challenge a wrongful conviction, and stringent parole boards. As a result, more than 2 million Americans are now warehoused in U.S. jails and prisons. Nearly 160,000 of them are sentenced to spend their entire lives behind bars, some for crimes committed (or allegedly committed) when they were under 18").

people in the nation's prisons and jails," which it said was "a 500 percent increase over the [previous] forty years." Brennan Center for Justice, *Update: Changes in State Imprisonment Rates* (June 7, 2016), https://www.brennancenter.org/our-work/research-reports/update-changes-state-imprisonment-rates (accessed July 2, 2021) [https://perma.cc/KFT3-WNDS]. It has been reported that the United States has incarcerated its citizens at a rate roughly five times higher than most other nations. Prison Policy Initiative, *States of Incarceration: The Global Context*, https://www.prisonpolicy.org/global/ (accessed July 12, 2021) [https://perma.cc/4BUG-V3Q4]. "Compared to the rest of the world, *every* U.S. state relies too heavily on prisons and jails to respond to crime." (Emphasis sic.) Prison Policy Initiative, *States of Incarceration: The Global Context 2018* (June 2018), https://www.prisonpolicy.org/global/2018.html (accessed July 12, 2021) [https://perma.cc/3PU2-GJWU].

{¶ 21} In this context, punishment began to eclipse the care and protection elements that are intrinsic to juvenile justice and was seen as the preferred tool to address juvenile crime. Statutory avenues were created from juvenile to adult court that led to harsher punishment for juveniles. As states across the nation began to change their approaches to juvenile justice, Ohio's juvenile-justice system began its own transformation:

> State legislators were keenly aware of the ramifications of a juvenile's transfer from juvenile court and its therapeutic milieu to adult court, in which punishment and deterrence are integral. In fact, transfer hearings were at the core of the "get tough" legislative response to the perceived epidemic of juvenile violence in this country, including here in Ohio. *Hanning* [89 Ohio St.3d at 89, 728 N.E.2d 1059]; Redding, *Juveniles Transferred to Criminal Court:*

11

*Legal Reform Proposals Based on Social Science Research*, 1997 Utah L.Rev. 709, 710-715 (1997).

This "transformation of transfer policy has been quick and dramatic." Bishop [*Juvenile Offenders in the Adult Criminal Justice System*], 27 Crime & Just. [81,] 84 [2000]. Between 1992 and 1997, at least 44 states and the District of Columbia enacted provisions to expediently facilitate the transfer of young offenders to adult court by establishing "offense-based, categorical, and absolute alternatives to individualized, offender-oriented waiver proceedings in the juvenile court" that streamlined the transfer process. *Id.* "As a result, in many states transfer implicates a broad range of offenders who are neither particularly serious nor particularly chronic, some of whom are not yet in their teens." *Id.* at 84-85.

In Ohio, the mandatory-transfer provision was one of the hallmarks of the state's "get-tough approach" to crimes committed by juveniles, creating a transfer provision wholly different from the discretionary transfers that previously were the sine qua non of juvenile transfers. *Hanning*, 89 Ohio St.3d at 89, 728 N.E.2d 1059. In this new regime, it is not the child's status as a juvenile that governs sentencing but, rather, the forum in which the child offender is adjudicated, so that the sentence ultimately imposed is one that is harsher than what a juvenile court would impose. The transfer hearing implicates far more significant issues than the venue or forum of trial; it serves as a vehicle by which a child offender is deprived of the rehabilitation and treatment potential of the juvenile-justice system.

(Footnote deleted.)  *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 71-73 (O'Connor, C.J., dissenting).

### B.  Juvenile-bindover laws as applied to Smith

{¶ 22} Today in Ohio a juvenile may be transferred to adult court for criminal prosecution by way of R.C. 2152.12, under which some transfers are mandatory and some are discretionary:

> "Mandatory transfer removes discretion from judges in the transfer decision in certain situations."  *State v. Hanning*, 89 Ohio St.3d 86, [90], 728 N.E.2d 1059 (2000); R.C. 2152.12(A).  "Discretionary transfer, as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety."  *Id.*; R.C. 2152.12(B).

*State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 10.

{¶ 23} In this case, the juvenile court found no probable cause for the charges that would have required Smith to be bound over.  It was then required to determine whether Smith was eligible for discretionary transfer according to the following factors:

> (1) The child was fourteen years of age or older at the time of the act charged.
>
> (2) There is probable cause to believe that the child committed the act charged.
>
> (3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.  In making its decision

under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed.

R.C. 2152.12(B).[3] After finding that Smith should be transferred, the juvenile court exercised its authority under R.C. 2152.12(B) and transferred Smith's case to adult court for prosecution.

{¶ 24} The question we address today is, what specifically transfers when a juvenile court exercises its discretion and binds over a juvenile, such as Smith, to an adult court pursuant to R.C. 2152.12?

{¶ 25} Smith argues here, as he did in the appellate court, that the language in the statute requires a finding of probable cause as to an act charged before that charge may be transferred to adult court. Smith generally asserts that any other outcome would be fundamentally unfair and a violation of his statutory and constitutional rights. The state urges us to look at the use of the term "the case" within the bindover statutes and to interpret it to mean something different from the term "the act charged" within the statutes, *see* R.C. 2152.12 (using both terms). Thus, the state argues that once a juvenile court has made a determination that

---

3. In addition, R.C. 2152.12(C) provides:

> Before considering a transfer under division (B) of this section, the juvenile court shall order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the examination.

probable cause exists for any charge in a juvenile-court complaint (and after finding that the child is not amenable to care or rehabilitation in the juvenile-justice system, if such finding is required under R.C. 2152.12(B)), the state is free to seek and a grand jury is free to return an indictment against the juvenile on any charge, even those for which no probable cause was found by the juvenile court.

**{¶ 26}** In light of the statutory language and framework, the history of juvenile-bindover procedure, and the practical and constitutional constraints on the process, we hold that a juvenile court's amenability determination with regard to an act that is charged in the juvenile court is first subject to a finding that there is probable cause to believe that the child committed the act charged and that a transfer of the acts charged to adult court confers jurisdiction to adjudicate only the acts charged for which probable cause has been found by the juvenile court.

## C. The juvenile-bindover statutes authorize transfer of "the act or acts" that are supported by probable cause

**{¶ 27}** By giving juvenile courts bindover authority, the General Assembly created an exception to the juvenile courts' exclusive jurisdiction over juvenile offenders. *See* R.C. 2152.03. One of the first and most critical determinations a juvenile court must make in evaluating whether to relinquish jurisdiction to an adult court—in both mandatory- and discretionary-bindover cases—is whether probable cause exists to believe that the child committed *the act charged*. R.C. 2152.12(A) and (B)(2) (both require for bindover that "[t]here is probable cause to believe that the child committed *the act charged*" [emphasis added]): R.C. 2152.12(A)(1)(a)(i) ("The child was sixteen or seventeen years of age at the time of *the act charged* and there is probable cause to believe that the child committed *the act charged*" [emphasis added]); R.C. 2152.12(A)(1)(a)(ii) ("The child was fourteen or fifteen years of age at the time of *the act charged*, section 2152.10 of the Revised Code provides that the child is eligible for mandatory transfer, and there is probable cause to believe that the child committed *the act charged*" [emphasis added]); R.C.

2152.12(A)(1)(b)(i) ("Division (A)(2)(a) of section 2152.10 of the Revised Code requires the mandatory transfer of the case, and there is probable cause to believe that the child committed *the act charged*" [emphasis added]); R.C. 2152.12(A)(1)(b)(ii) ("Division (A)(2)(b) of section 2152.10 of the Revised Code requires the mandatory transfer of the case, and there is probable cause to believe that the child committed *the act charged*" [emphasis added]); and R.C. 2152.12(B)(2) ("There is probable cause to believe that the child committed *the act charged* [emphasis added]). R.C. 2152.02(A) defines "act charged" as "the act that is identified in a complaint, indictment, or information alleging that a child is a delinquent child." We note that the word repeatedly used in the statute, "act," is singular; "act" does not connote a group of acts or a course of conduct, and it is beyond our authority to read words into a statute that were not put there by the legislature, *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53, 524 N.E.2d 441 (1988).

{¶ 28} Additionally instructive is the meaning of the term "transfer," which, for purposes of R.C. Chapter 2152, is defined in R.C. 2152.02(Z) as "the transfer for criminal prosecution of a case involving the alleged commission by a child of *an act* that would be an offense if committed by an adult from the juvenile court to the appropriate court that has jurisdiction of the offense." (Emphasis added.) While the state argues that what transfers is "the case," not "an act," we note that "act charged" is defined in R.C. 2152.02(A) and that in R.C. 2152.12, "act" is modified by the word that precedes it: "an." Because "case" is undefined, it takes on its ordinary and plain meaning. R.C. 1.42; *Brecksville v. Cook*, 75 Ohio St.3d 53, 56, 661 N.E.2d 706 (1996). Here, "case" simply means the "proceeding, action, suit, or controversy," i.e., the matter before the court or the legal claims to be considered by the court. *See Black's Law Dictionary* 266 (11th Ed.2019). In Smith's situation, the "case" was composed of the acts that transferred, i.e., the acts that the juvenile court found were supported by probable cause.

{¶ 29} Had the legislature intended the term "case" to have as consequential a meaning as the state suggests, it would have made clear that intention by explicitly defining the term. But "case" is not defined, and "act" is. Therefore, a juvenile court may transfer a case or a matter to adult court, but the adult court's jurisdiction is limited to the acts charged for which probable cause was found.

*1. The bindover statutes must be read in pari materia, and we*
*may not add language to the statutes in order to reconcile them*

{¶ 30} The statutory-construction canon of in pari materia instructs that statutes relating to the same subject "be construed together, so that inconsistencies in one statute may be resolved by looking at [the] other statute on the same subject." *Black's Law Dictionary* 911 (10th Ed.2014); *see also State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 17 (lead opinion) (the in pari materia rule of statutory construction applies when the wording of a statute is in doubt or ambiguous, i.e., capable of bearing more than one meaning). Because the juvenile-transfer process involves the application of different sections within R.C. Title 21, this canon should be followed.

{¶ 31} Focusing on "the act" rather than "the case" when determining probable cause and when determining what is transferred to adult court results in a cohesive reading of the bindover statutes. For example, R.C. 2152.12(F) sets forth the juvenile court's procedure when analyzing a case that involves a request to transfer acts under both R.C. 2152.12(A) and 2152.12(B), and it specifically requires the court to consider the transfer under division (A) first, R.C. 2152.12(F)(1). Even if the court transfers the case under division (A), when a discretionary-bindover offense is charged, the court still must "decide, in accordance with division (B) * * * whether to grant the motion requesting that the case or cases involving one or more of the acts charged be transferred pursuant to that division." R.C. 2152.12(F)(2). Because juvenile complaints may contain both mandatory- and discretionary-bindover offenses, as Smith's originally did, the

statute requires that each act charged be considered separately. If the General Assembly intended the entire "case" to be bound over upon the finding of probable cause with respect to one act charged, then discretionary-bindover offenses would automatically be bound over on a finding of probable cause on a mandatory-bindover offense and division (B) would be of no effect.

{¶ 32} The state and the Eighth District rely on R.C. 2152.12(I) to extend the adult court's jurisdiction over any other offense arising out of "the same course of conduct" as the act that transferred. *See* 2019-Ohio-4671 at ¶ 33. And even though R.C. 2152.12(I) divests the juvenile court of jurisdiction once a transfer is made, it must be read in pari materia with the other provisions of the bindover statutes, and the adult court's jurisdiction is over only the specific act or acts that transferred, i.e., those acts supported by probable cause.

{¶ 33} Once an act is transferred, R.C. 2152.12(I) specifically states, the juvenile court must discontinue "all further proceedings pertaining to the act charged * * *, and the case then shall be within the jurisdiction of the court to which it is transferred as described in division (H) of section 2151.23 of the Revised Code." When the case is finally adjudicated by the adult court, under R.C. 2151.23(H) there are three situations in which a child may be convicted of a crime that is different from the offense transferred by the juvenile court: the child may be convicted (1) of an offense that is the same degree or a lesser degree of the offense that was the basis of the transfer, (2) of an offense that is a lesser included offense of the offense that was the basis of the transfer, *or* (3) "*for the commission of another offense that is different from the offense charged.*" (Emphasis added.) R.C. 2151.23(H).

{¶ 34} R.C. 2151.23(H) thus sets forth the jurisdiction of the adult court by describing the adult court's "jurisdiction subsequent to the transfer." It does not authorize jurisdiction over whatever charges the adult court independently

18

determines should arise from the underlying course of criminal conduct that was the basis for the complaint in the juvenile court. R.C. 2151.23(H).

{¶ 35} The phrase "another offense that is different from the offense charged" is but one of three parts of the statutory scheme of R.C. 2151.23(H) modifying the phrase "offense that was the basis of the transfer." This language gives adult courts flexibility in resolving cases by allowing them to accept a plea to or convict the defendant of an offense that is either a lesser degree of, a lesser included offense of, or an offense different from the offense charged that was rooted in the offense that was the basis of the transfer.[4]

{¶ 36} Finally, as part of this contextual analysis, we must " 'giv[e] such interpretation as will give effect to every word and clause in a statute,' " treating no part " 'as superfluous unless that is manifestly required, and * * * avoid[ing] that construction which renders a provision meaningless or inoperative.' " (First brackets sic.) *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 21, quoting S*tate ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917). We can give full effect to R.C. 2151.23(H), by reading its phrases within their context and by fulfilling our duty to read it so as to give it full effect. And given its full effect, this statute does not authorize a conviction for a charge that has effectively been dismissed by a juvenile court. We cannot attempt to fit the statutes together by adding a "course of conduct" determination to the transfer process. Again, this would necessitate adding language to the statutes, which is something courts are not permitted to do. *See Cleveland Elec. Illum. Co.*, 37 Ohio St.3d at 53, 524 N.E.2d 441.

---

4. For example, under this statutory language, an adult court could accept a plea to reckless homicide, R.C. 2903.041, on a transferred felony-murder charge, R.C. 2903.02(B). Reckless homicide is not a lesser included offense of felony murder, *State v. Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 1, and thus, it is *an offense different from* felony murder.

{¶ 37} Our interpretation today is also consistent with the purposes for the juvenile-justice system, which are set forth in the Ohio Revised Code: "to provide for the care, protection, and mental and physical development of children subject to [R.C. Chapter 2152], protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A). And any other statutory analysis would ignore the exclusive jurisdiction of the juvenile court that is afforded under R.C. Title 21.

*2. Effects of the juvenile court's transfer of jurisdiction to adult court*

{¶ 38} To hold that a finding of probable cause on any one transferable offense permits the transfer of the entire "case," including offenses for which no probable cause was found, runs counter to the protections afforded to juveniles in the juvenile-bindover statutes. In Smith's case, the juvenile court specifically found (and the state conceded) that the firearm specifications in the complaint were not supported by the evidence presented at Smith's bindover hearing. Regardless, the state was later able to obtain an indictment in adult court containing the firearm specifications that had been found not to be supported by probable cause by the juvenile court. The state was then able to use the additional one- and three-year mandatory prison terms that the specifications require in its plea negotiations with Smith.

{¶ 39} For juveniles who are subject to being bound over to adult court for criminal prosecution, the state must present to the juvenile court "credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to R.C. 2151.26(B) [now R.C. 2152.12(A)]."[5] *State v. Iacona*, 93 Ohio St.3d 83, 752 N.E.2d 937 (2001), at

---

5. In 2002, R.C. 2151.26 was amended and recodified as R.C. 2152.12. *See* Am.Sub.S.B. No. 179, 148 Ohio Laws, Part IV, 9447, 9548.

paragraph three of the syllabus. And "[i]n meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt." *Id.* at 93 (lead opinion). To hold that the state may seek criminal charges against a juvenile in adult court for acts that the court with exclusive, original jurisdiction found to be unsupported by probable cause would be noxious to fundamental fairness. Moreover, it would be contrary to law.

{¶ 40} In *D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, we held that under the 1996 amendments to the bindover statutes, "a juvenile court cannot bind over a juvenile on the sole basis that the juvenile has been previously bound over." *Id.* at ¶ 45-47 (announcing that this court's ruling in *State v. Adams*, 69 Ohio St.2d 120, 431 N.E.2d 326 (1982), was explicitly overruled by the statutory amendments). To hold that a finding of probable cause on any bindover offense permits the juvenile to be bound over on any other offense would ignore this precedent. It would also render R.C. 2152.12 meaningless by ignoring the statutorily required finding of probable cause by the juvenile court for each act charged, including specifications.

{¶ 41} "Absent a proper bindover procedure * * *, the juvenile court has the exclusive subject matter jurisdiction over any case concerning a child who is alleged to be a delinquent." *Wilson*, 73 Ohio St.3d 40, 652 N.E.2d 196, at paragraph one of the syllabus. Unless the juvenile court finds probable cause to believe that the child committed an act charged, it does not consider amenability, and thus, not all the conditions for a discretionary bindover are satisfied to permit the discretionary transfer of a child's case to adult court. *See* R.C. 2152.12(B)(2) and (3).

{¶ 42} It is only the juvenile court that has jurisdiction to determine amenability. R.C. 2152.12. Adult courts have no jurisdiction to determine whether a child is amenable to care or rehabilitation within the juvenile system. R.C.

2152.03 ("The case relating to the child * * * shall be within the exclusive jurisdiction of the juvenile court, subject to section 2152.12 of the Revised Code"). Accordingly, adult courts lack subject-matter jurisdiction to convict (1) a juvenile offender for any acts charged for which no probable cause has been found by a juvenile court and (2) with regard to discretionary-bindover offenses, a juvenile who has not been determined by a juvenile court to be unamenable to care or rehabilitation in the juvenile system, which is a determination within the exclusive jurisdiction of the juvenile court.

{¶ 43} We hold that that the General Division of the Cuyahoga County Common Pleas Court lacked subject-matter jurisdiction over Counts 4, 6,  , and 8 and the firearm specifications because the juvenile court found that the acts related to those counts and specifications were not supported by probable cause and thus the juvenile court could not have made an amenability determination with regard to those acts. There was thus a jurisdictional defect in the bindover process.

## III. CONCLUSION

{¶ 44} A finding of probable cause is a jurisdictional prerequisite under R.C. 2152.12 to transferring a child to adult court for prosecution of an act charged. When no probable cause has been found by a juvenile court for an act charged, there is no cause for conducting an amenability determination in relation to the act charged. In the absence of a juvenile court's finding probable cause or making a finding that the child is unamenable to care or rehabilitation within the juvenile system, no adult court has jurisdiction over acts that were charged in but not bound over by the juvenile court. The judgment of the court of appeals is reversed, Smith's conviction is vacated, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed,
conviction vacated,
and cause remanded.

O'CONNOR, C.J., and DONNELLY and STEWART, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by FISCHER and DEWINE, JJ.

_____

**KENNEDY, J., dissenting.**

{¶ 45} Today's decision by the majority is unmoored from the plain and unambiguous language of Ohio's discretionary-bindover statute and from the actual legal consequences of a finding of no probable cause. To achieve its result, the majority falsely equates a finding of no probable cause with a dismissal. The majority's decision puts asunder the orderly transfer of a juvenile and his or her case from a juvenile court to an adult court and results in a judgment that has no basis in law. Because the plain and unambiguous language of Ohio's discretionary-bindover statute contemplates the transfer of a juvenile and his or her *case* and not just those acts charged in the complaint for which the juvenile-court judge has found probable cause, I would affirm the judgment of the Eighth District Court of Appeals.

{¶ 46} Former United States Supreme Court justice Felix Frankfurter once said:

It is not easy to stand aloof and allow want of wisdom to prevail, to disregard one's own strongly held view of what is wise in the conduct of affairs. But it is not the business of this Court to pronounce policy. It must observe a fastidious regard for limitations on its own power, and this precludes the Court's giving effect to its own notions of what is wise or politic. That self-restraint is of the essence in the observance of the judicial oath, for the Constitution has not authorized the judges to sit in judgment on the wisdom of what [the Legislative Branch] and the Executive Branch do.

*Trop v. Dulles*, 356 U.S. 86, 120, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (Frankfurter, J., dissenting). That statement is as true for this court as it is for the United States Supreme Court. Today the majority loses sight of this court's limited power.

### Statutory Construction

{¶ 47} In construing the plain meaning of a statute, we adhere to a set of discrete rules. When properly applied, these principled guideposts establish a protective barrier, ensuring that our duty to interpret the meaning of the law from only its text is not overridden by a desire for a particular outcome.

{¶ 48} In interpreting the text of the statute at issue here, the majority states that it took into account the "statutory language and framework, the history of juvenile-bindover procedure, and the practical and constitutional constraints on the process." Majority opinion, ¶ 26. The majority then reasons that because the General Assembly defined the word "act" but not the word "case," courts should assign more importance to the word "act" when interpreting the meaning of the statute. *Id.* at ¶ 28. After all, the majority reasons, "[h]ad the legislature intended the term 'case' to have as consequential a meaning as the state suggests, it would have made clear that intention by explicitly defining the term." *Id*. at ¶ 29. But the majority's reliance on "the history of juvenile-bindover procedure," "the practical and constitutional constraints on the process," and the majority's newly created consequential-definition rule is improper, because those are not discrete rules of statutory interpretation that we are bound to apply. Instead, they are means to an end.

{¶ 49} "[W]e are not at liberty to regard anything but the express declarations of the legislature." *Burgett's Lessee v. Burgett*, 1 Ohio 469, 472 (1824). "It is admitted that if the will of the legislature be clearly ascertained, a court of law [is] bound to carry it into effect, however inexpedient or injudicious [it] may deem it." *Id*.

{¶ 50} "The primary rule in statutory construction is to give effect to the legislature's intention." *Cline v. Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 97, 573 N.E.2d 77 (1991), citing *Carter v. Youngstown Div. of Water*, 146 Ohio St. 203, 65 N.E.2d 63 (1946), paragraph one of the syllabus. That intent is determined primarily by looking at the language of the statute. *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). And when the statute "conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.,* 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). "Where the language of a statute is plain and unambiguous * * * there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 51} When interpreting a statutory provision, we have no authority to elevate the importance of some words in the statute over other words in the statute, because the court must give effect to *all* the words used, making neither additions nor deletions. *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 19, citing *Cline* at 97. "We 'do not have the authority' to dig deeper than the plain meaning of an unambiguous statute 'under the guise of either statutory interpretation or liberal construction.' " *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8, quoting *Morgan v. Adult Parole Auth.*, 68 Ohio St.3d 344, 347, 626 N.E.2d 939 (1994).

{¶ 52} An application of these rules of statutory construction to R.C. 2152.12(B), establishes that the statute is plain and unambiguous and should be applied as written.

### R.C. 2152.12(B) Is Plain and Unambiguous

R.C. 2152.12(B) provides:

[A]fter a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the juvenile court at a hearing may transfer the case if the court finds all of the following:

(1) The child was fourteen years of age or older at the time of the act charged.

(2) There is probable cause to believe that the child committed the act charged.

(3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions.

**{¶ 53}** We give meaning to all the words used by the General Assembly when interpreting a statute and read all words and phrases in context and in harmony with the rules of grammar and common usage. *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. And when the statutory language is unambiguous, our review "starts and stops" with the statutory language. *Johnson v. Montgomery*, 151 Ohio St.3d 75, 2017-Ohio-7445, 86 N.E.3d 279, ¶ 15.

**{¶ 54}** The opening language of R.C. 2152.12(B) establishes five things. First, the General Assembly grants the juvenile court discretionary authority to transfer a matter to the adult court.

**{¶ 55}** Second, the legislature limits the exercise of that authority by allowing a discretionary transfer only after the juvenile court determines that certain conditions exist. The conditions set forth by the legislature in R.C. 2152.12(B) follow a colon and are subdivisions (1), (2), and (3) of that division. Each of the subdivisions is a complete, independent sentence that ends with a period and does not require looking back to the opening language of division (B) for interpretation.

**{¶ 56}** Third, in deciding whether to transfer a matter to the adult court, the juvenile court is required to hold a hearing.

**{¶ 57}** Fourth, the juvenile court's discretionary authority is triggered by the filing of a complaint in juvenile court that alleges that a child has committed an act that would be a felony if committed by an adult.

**{¶ 58}** Lastly, the General Assembly establishes what the juvenile court may transfer to the adult court: the case.

**{¶ 59}** Contrary to the majority's determination, the fact that the General Assembly did not define the word "case" is of no consequence. There are an untold number of words used by the legislature in the Revised Code that are undefined. However, the legislature has enacted a statutory provision instructing that undefined words should be construed according to "common usage." R.C. 1.42. And "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." *Id.*

**{¶ 60}** I agree with the majority's definition of the word "case." "Case" means the " 'proceeding, action, suit, or controversy.' " Majority opinion at ¶ 28, quoting *Black's Law Dictionary* 266 (11th Ed.2019). *See also* 1A Corpus Juris Secundum, Actions, Section 17 (2021) ("The term 'case' has been defined or treated as synonymous with the terms 'action,' 'cause,' and 'lawsuit' " [footnotes omitted]).

**{¶ 61}** "The word 'action' has typically been understood to refer to the entire legal proceeding, regardless of how many claims or charges are included in the proceeding. * * * This understanding is consistent with common parlance. When we say that someone pursued a legal action, we are talking about the entire proceeding, not some discrete part of the proceeding." *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, 151 N.E.3d 574, ¶ 13. Similarly, in common parlance, a criminal "case" means all the charges emanating from a series of related events.

**{¶ 62}** A plain reading of R.C. 2152.12(B) also tells us that the juvenile court's authority to transfer a matter to the adult court is triggered by the filing of a complaint with certain allegations, but what is transferred is not the complaint—it is the case. So, the filing of a complaint creates a case. And filing of complaints is an ordinary, everyday occurrence in courthouses across Ohio.

**{¶ 63}** A complaint is just a complaint until it is filed in a court. At that point, the complaint becomes a case pending before the court. Therefore, the case is the filed complaint and all the acts charged in it.

**{¶ 64}** In this case, based on a series of related acts, a county prosecuting attorney drafted and signed a juvenile complaint against Smith charging numerous acts. The prosecutor filed the complaint in juvenile court, and it was assigned case No. DL17114773. Therefore, the case at issue here includes all the acts charged in that original juvenile complaint.

**{¶ 65}** This determination is not only consistent with the plain language of the statute but is also supported by our recent interpretation of a different provision of R.C. 2152.12—the mandatory-transfer provision. In *State v. D.B.*, 150 Ohio St.3d 452, 2017-Ohio-6952, 82 N.E.3d 1162, we rejected an argument that asked us to narrow the definition of "the case" to something less than all acts charged in a complaint. In that case, which was before us as a certified conflict between judgments of the Second District Court of Appeals and the Eighth District Court of Appeals, the focus of our inquiry was the plain meaning of the reverse-transfer statute, R.C. 2152.121. *D.B.* at ¶ 10. Specifically, we were asked whether an adult court had the authority to sentence a juvenile pursuant to R.C. Chapter 2929 on all charges that had been transferred to it from juvenile court when only one charge for which the juvenile was actually convicted would have been subject to mandatory transfer under R.C. 2152.12(A). *Id*. at ¶ -9. Therefore, our decision turned on the meaning of the phrase "the case." In reaching our conclusion, we held that "[i]f a juvenile court determines in a delinquency case that there is probable cause to

support a single charge of aggravated robbery with an attached firearm specification, *the case* is subject to mandatory transfer." (Emphasis sic.) *Id.* at ¶ 14. The meaning of the term "case" does not change from one section of the juvenile-bindover statutory scheme to another. "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Kmart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

{¶ 66} And when the statutory scheme is looked at as a whole, R.C. 2152.12(I) leaves no doubt that the word "case" means *all* "the delinquent acts alleged in the complaint." R.C. 2152.12(I) provides that a "transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint, and, upon the transfer, all further proceedings pertaining to the act charged shall be discontinued in the juvenile court, and the case then shall be within the jurisdiction of the court to which it is transferred as described in division (H) of section 2151.23 of the Revised Code."

{¶ 67} R.C. 2152.12(I) is important in three respects. First, the plain language of the statutory provision establishes that the case is the filed complaint. Second, the provision permits more than one delinquent act to be alleged in the complaint. And lastly, the provision categorically severs the juvenile court's jurisdiction over any of "the delinquent acts alleged in the complaint." R.C. 2152.12(I). The statute does not say, as the majority holds, that the jurisdiction of the juvenile court abates only as to the acts charged for which probable cause was found. Instead, the statute provides that the jurisdiction of the juvenile court abates regarding *the delinquent acts alleged* in the complaint.

{¶ 68} The probable-cause requirement in R.C. 2152.12(B)(2) is just one of three findings that the juvenile court must make before it may exercise its authority to transfer a case to the adult court. R.C. 2152.12(B)(2) is a complete, independent sentence and does not explicitly or implicitly relate back to the opening language

in R.C. 2152.12(B) or to the word "case." A finding by the juvenile court of no probable cause as to one of the acts charged in the case does not, as the majority concludes, mean that the act charged "has effectively been dismissed," majority opinion at ¶ 36.

{¶ 69} The majority agrees with Smith that the determination whether an act charged is transferred to the adult court turns on whether the juvenile-court judge finds probable cause for the act. Majority opinion at ¶ 2. The majority reaches this determination by focusing on the General Assembly's use of the singular "an act charged" in R.C. 2152.12(B)(2) and by asserting that the term "act" has more significance than the term "case." Majority opinion at ¶ 29. Therefore, the majority concludes that what is transferred to the adult court is the single act charged. But this conclusion leads to an absurd result. Under that analysis, a complaint charging numerous acts would generate as many cases as there are charges to transfer.

{¶ 70} "We have avoided making fine distinctions about the meaning of a statute based upon its use of the singular form of a word. *See Wingate v. Hordge*, 60 Ohio St.2d 55, 57-59, 396 N.E.2d 770 (1979); *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 14-19." *D.B.*, 150 Ohio St.3d 452, 2017-Ohio-6952, 82 N.E.3d 1162, at ¶ 16. And "the General Assembly has specifically instructed us to read statutes so that '[t]he singular includes the plural, and the plural includes the singular.' " *Id*., quoting R.C. 1.43(A).

{¶ 71} The discretionary-transfer statute, R.C. 2152.12(B), provides: "[T]he juvenile court at a hearing may transfer the case if the court finds all of the following." The provision ends with a colon followed by numbered subdivisions. Each subpart ends with a period. "[When] [e]ach clause is distinct and ends with a period, [it] strongly suggest[s] that each may be understood completely without reading any further." *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335,

344, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005). Subdivision (2) of R.C. 2152.12(B) (the probable-cause requirement) is clearly a distinct, complete, independent sentence. The subdivision can be readily understood without any further reading. Therefore, the subdivision's reference to "the act charged" adds no interpretive value to the meaning of the word "case" in the opening language of subdivision (B).

### Consequences of the Majority's Decision

{¶ 72} The consequences of the majority's decision are far-reaching. The decision does violence to more than just the plain and unambiguous language of R.C. 2152.12(B), it also does violence to other statutory provisions establishing and limiting the jurisdiction of juvenile and adult courts and to the Rules of Juvenile Procedure promulgated by this court.

{¶ 73} The majority does not explain what it means by its conclusion that a finding of no probable cause by the juvenile court means that the charge has "effectively been dismissed," majority opinion at ¶ 36. Does it mean that the charge remains pending under the jurisdiction of the juvenile court, awaiting further evidence from the state? Or does it mean that the charge is dismissed without prejudice or dismissed with prejudice? Regardless, none of these results finds support in the law.

*Dual jurisdiction of juvenile court and adult court*
*over a case or any portion of a case is strictly prohibited*

{¶ 74} The jurisdictions of juvenile courts and adult courts are set by the General Assembly. R.C. 2151.23; R.C. 2931.03 (common-pleas-court jurisdiction with regard to criminal cases). There is no language in the Revised Code that creates dual jurisdiction over certain cases and forces a juvenile to stand simultaneously before two courts to answer to acts charged that relate to one operative set of facts.

**{¶ 75}** As explained above, R.C. 2152.12(I) categorically severs the jurisdiction of the juvenile court over any of the delinquent acts charged in a complaint when the case is transferred. The language is unequivocal. The jurisdiction of the juvenile court abates regarding *the delinquent acts alleged* in the complaint. *Id*.

**{¶ 76}** Moreover, we have previously held that "[w]hen a minor is transferred from the Juvenile Court to [an adult court] on a charge which would constitute a felony if committed by an adult, the grand jury is empowered to return any indictment under the facts submitted to it and is not confined to returning indictments only on charges originally filed in the Juvenile Court." *State v. Adams*, 69 Ohio St.2d 120, 431 N.E.2d 326 (1982), paragraph two of the syllabus. *Adams* has been superseded by statute in part, *see* Section 3(B), Am.Sub.H.B. No. 1, 146 Ohio Laws, Part I, 1, 96, ("H.B. 1"), but as we explained in *D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, at ¶ 46, the part that was superseded was the portion of the opinion that held that once a juvenile has had a case bound over to an adult court, any future case brought in a juvenile court alleging that the juvenile committed an act that would be a felony if committed by an adult would automatically be bound over. This court wrote in *D.W.*: "[I]n the wake of *Adams*, the General Assembly prohibited juvenile courts from holding that once a juvenile has been bound over to adult court, the juvenile will be bound over in all future felonies." *D.W.* at ¶ 46. The portion of *Adams* regarding the power of the grand jury when a case is transferred to an adult court was not touched by the General Assembly's statutory changes. The only statutes amended were R.C. 2151.011 and former R.C. 2151.26, and none of the amendments addressed grand jury procedures. *See* Section 3(B), H.B. 1.

**{¶ 77}** R.C. 2152.12(I) refers to R.C. 2151.23(H) in describing the jurisdiction of the adult court upon transfer. R.C. 2151.23(H) also makes clear that transferring the case removes the juvenile court's jurisdiction over the case: "except

as provided in section 2152.121 of the Revised Code [which is not at issue here], the juvenile court does not have jurisdiction to hear or determine the case subsequent to the transfer." In essence, R.C. 2151.23(H) establishes that the case restarts in the adult court after a transfer:

> The court to which the case is transferred for criminal prosecution * * * has jurisdiction subsequent to the transfer to hear and determine the case in the same manner as if the case originally had been commenced in that court, subject to section 2152.121 of the Revised Code, including, but not limited to, * * * jurisdiction to accept a verdict and to enter a judgment of conviction * * * against the child for the commission of the offense that was the basis of the transfer of the case for criminal prosecution, whether the conviction is for the same degree or a lesser degree of the offense charged, for the commission of a lesser-included offense, or for the commission of another offense that is different from the offense charged.

{¶ 78} R.C. 2151.23(H) plainly establishes that the adult court has jurisdiction to consider any charge arising out of the commission of the offense that led to the transfer. The court may enter a judgment of conviction for "the commission of another offense that is different from the offense charged." *Id.* Therefore, the adult court is not held to the probable-cause determinations of the juvenile court. Once the juvenile and his or her case is transferred to the adult court, the juvenile court's jurisdiction abates and the adult court's jurisdiction begins. R.C. 2152.12(I).

{¶ 79} Like Ohio juvenile and adult courts, the position of county prosecutor and the grand jury have separate enumerated powers established by

statute. Through these separate enumerated powers, Ohio's transfer scheme ensures that a juvenile offender does not face two parallel tracks of adjudication.

{¶ 80} A county prosecutor has the authority to "inquire into the commission of crimes within the county." R.C. 309.08(A). And considering the broad powers granted to grand juries, any determination made by juvenile-court judges as to probable cause has no role in a grand jury's decision-making process. "After the charge of the court of common pleas, the grand jury shall retire with the officer appointed to attend it, and proceed to inquire of and present all offenses committed within the county." R.C. 2939.08. A grand jury considers the case pursuant to its own authority under the Revised Code. For courts performing preliminary hearings, their role " 'is not to hear all the evidence and determine the guilt or innocence of the accused but rather to determine whether sufficient evidence exists to warrant binding the accused over to the grand jury, where, after a more thorough investigation of the evidence, it is then determined whether a formal charge shall be made against the accused.' " *State v. Minamyer*, 12 Ohio St.2d 67, 69, 232 N.E.2d 401 (1967), quoting *White v. Maxwell*, 174 Ohio St. 186, 188, 187 N.E.2d 878 (1963). R.C. 2152.12(B) does not place a limitation on the separate and independent powers of county prosecutors or grand juries. And the statutes defining their powers and duties do not relate back to R.C. 2152.12(B).

*A probable-cause determination is not an adjudication*

{¶ 81} Even if the majority's conclusion—that a finding of no probable cause by a juvenile court means that the charge has "effectively been dismissed"— does not result in concurrent jurisdiction of the juvenile court and the adult court, the juvenile court's no-probable-cause finding cannot mean that the act charged is dismissed. This is because a probable-cause determination does not have the same legal effect as a dismissal with prejudice.

{¶ 82} A finding of no probable cause is not an adjudication. Juv.R. 30(A) provides that a probable-cause hearing is a "preliminary hearing to determine if

there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult."  A Juv.R. 30(A) hearing is conducted "[i]n any proceeding where the court considers the transfer of a case for criminal prosecution."   To satisfy the probable-cause standard, "the state must produce evidence that raises more than a mere suspicion of guilt, but *need not* provide evidence proving guilt beyond a reasonable doubt."  (Emphasis added.) *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001) (lead opinion).  "The juvenile court has the duty to assess the credibility of the evidence and to determine whether the state has presented credible evidence going to each element of the charged offense, *but it is not permitted to exceed the limited scope of the bindover hearing or to assume the role of the fact-finder at trial.  In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 44."  (Emphasis added.)  *In re D.M.*, 140 Ohio St.3d 309, 2014-Ohio-3628, 18 N.E.3d 404, ¶ 10.  If the juvenile court retains jurisdiction after the probable-cause hearing, "it shall set the proceeding for hearing on the merits."  Juv.R. 30(E).

{¶ 83} A proceeding on the merits in juvenile court is controlled by Juv.R. 29.  Under that rule, "[u]pon the determination of the issues," the court must dismiss the complaint if the allegations in the complaint were not proved, and if the allegations were proved, it must enter an adjudication, postpone an adjudication, or dismiss the complaint if dismissal is in the best interest of the child and the community.  Juv.R. 29(F).  Once the juvenile court orders the transfer of the case pursuant to R.C. 2152.12(B), there can be no further procedure in the juvenile court.  Its jurisdiction is abated pursuant to R.C. 2152.12(I).  It is powerless to hold the Juv.R. 29 hearing to actually dismiss charges.

{¶ 84} The transfer procedure set forth in R.C. 2152.12(B) merely allows the juvenile court to determine in which court—juvenile or adult—the child will be adjudicated for the acts charged in the case.  Ohio's juvenile-bindover statutory scheme is written such that a juvenile's case will be handled as a whole, and it

establishes reverse-transfer procedures if the child is not found guilty of the crimes charged in the complaint that resulted in the transfer to the adult court, *see* R.C. 2152.121.

**{¶ 85}** A no-probable-cause finding cannot result in the dismissal of the acts charged, because, as explained above, a dismissal can occur only after an adjudication. Juv.R. 29(F). The probable-cause hearing is not an adjudicatory hearing, it is patently something else. Juv.R. 30. During the probable-cause proceeding, the state has no burden to prove the case beyond a reasonable doubt, and jeopardy does not attach until the adjudicatory phase of the delinquency proceedings commences, *A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, at ¶ 28.

<b>The Facts of this Case Are Not What the Majority<br>Represents Them To Be</b>

**{¶ 86}** Lastly, the facts of this case are not what the majority represents them to be. At the outset of the juvenile-court proceedings, the judge had to decide whether this was a mandatory-transfer case or a discretionary-transfer case. That decision turned on the acts charged in the complaint and whether the trial court found probable cause to believe that Smith had committed them.

**{¶ 87}** The juvenile court found probable cause to believe that Smith had committed aggravated robbery. The aggravated-robbery statute, R.C. 2911.01, states that "[n]o person, in attempting or committing a theft offense * * * shall * * *[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." Therefore, the juvenile court found probable cause to believe that at the very least, one of the offenders indicated that he possessed a firearm during the commission of the crimes. But while an offender may be found guilty of aggravated robbery by being complicit in an aggravated robbery, *see* R.C. 2923.03(F), R.C. 2152.10(A)(2)(b) requires that for a juvenile court to order a

juvenile bound over to adult court under the mandatory-bindover provisions because the juvenile committed a crime with a firearm, the charged juvenile had to have actually had possession of the firearm. The statute provides that a child is eligible for mandatory bindover when "[t]he child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged." R.C. 2152.10(A)(2)(b). Therefore, the statute requires that to be eligible for mandatory bindover based on an aggravated robbery, a juvenile must have himself possessed the firearm.

{¶ 88} In *State v. Hanning*, 89 Ohio St.3d 86, 728 N.E.2d 1059 (2000), paragraph two of the syllabus, this court held that the complicity statute does not apply to the juvenile-bindover criteria set forth in former R.C. 2151.26 (now R.C. 2152.12, *see* Am.Sub.S.B. No. 179, 148 Ohio Laws, Part IV, 9447, 9549). That is, in the context of a bindover proceeding, the element of controlling a firearm cannot be satisfied by the activity of an accomplice.

{¶ 89} But the determination by the juvenile court in this case that there was no probable cause to believe that Smith had the firearm himself did not end the inquiry as to whether he and the case should be transferred to the adult court. That finding meant only that Smith was not subject to a mandatory transfer. The juvenile court then had to decide whether transferring Smith and his case to the adult court was proper based on the statutory requirements of discretionary bindover.

### Conclusion

{¶ 90} Today the majority creates an outcome by inserting its own policy-making preferences into the language of the statute. The majority therefore elevates its policy preferences over the will of the people and the people they elected to serve in the General Assembly who are entrusted on behalf of all Ohioans to make policy decisions through the enactment of laws.

> [T]he courts are not at large. * * * They are under the constraints imposed the judicial function in our democratic society. As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond it is to usurp a power which our democracy has lodged in its elected legislature. * * * A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction.

Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 533 (1947). "[T]he only sure safeguard against crossing the line between adjudication and legislation is an alert recognition of the necessity not to cross it and instinctive, as well as trained, reluctance to do so." *Id.* at 535.

{¶ 91} Because the plain unambiguous language of R.C. 2152.12(B) contemplates the transfer of a juvenile and his or her case and not just those charges that the juvenile court judge found probable cause for, I dissent. I would affirm the judgment of the court of appeals.

FISCHER and DEWINE, JJ., concur in the foregoing opinion.

————————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Ochocki, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Lauren Hammersmith, Assistant Public Defender, for appellant.

Mark A. Stanton, Cuyahoga County Public Defender, and Erika B. Cunliffe and Leah Winsberg, Assistant Public Defenders, urging reversal for amicus curiae Cuyahoga County Public Defender.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Samuel C. Peterson, Deputy Solicitor General, urging affirmance for amicus curiae Attorney General Dave Yost.

_____